IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BIOCONVERGENCE LLC<br>d/b/a SINGOTA SOLUTIONS,<br><br>　　　Plaintiff,<br><br>v.<br><br>JASPREET ATTARIWALA *et al.*,<br><br>　　　Defendants. | Case: 1:19-mc-00205<br>Assigned To : Moss, Randolph D.<br>Assign. Date : 11/27/2019<br>Description: Misc.<br><br>UNDERLYING CASE:<br>S.D. Ind. 1:19-CV-01745 |

## MOTION TO QUASH THIRD PARTY SUBPOENA

Third Party, Emergent BioSolutions, Inc. ("Emergent"), by and through its undersigned counsel, respectfully submits this Motion to Quash pursuant to Rule 45(d)(3) of the Federal Rules of Civil Procedure for the reasons outlined in Emergent's Memorandum in Support of Motion to Quash Third Party Subpoena filed contemporaneously with this Motion.

Pursuant to Local Civil Rule 7(m), the undersigned conferred with counsel for Plaintiff in an attempt to resolve or narrow this dispute. This Motion will be opposed.

Respectfully submitted,

/s/ Joseph E. Schuler

Joseph E. Schuler (DC Bar No. 296269)
E-mail: joseph.schuler@jacksonlewis.com
JACKSON LEWIS P.C.
10701 Parkridge Boulevard, Suite 300
Reston, Virginia 20191
Telephone: (703) 483-8300
Facsimile: (703) 483-8301

*Counsel for Third Party,
Emergent BioSolutions, Inc.*

RECEIVED
NOV 27 2019
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the forgoing Motion to Quash Third Party Subpoena and Brief in Support were served by electronic and first class mail, postage prepaid, on November 27, 2019, upon the following counsel of record in *BioConvergence, LLC d/b/a Singota Solutions v. Attariwala et al.*, Case No. 1:19-cv-01745 (S.D. Ind.), the matter in which the contested subpoena that is the subject of this miscellaneous proceeding was issued.

Christopher C. Murray
Justin A. Allen
Susan H. Jackson
Ogletree Deakins Nash Smoak & Stewart, P.C.
111 Monument Circle, Suite 4600
Indianapolis, Indiana 46204
christopher.murray@ogletree.com
justin.allen@ogletree.com
susan.jackson@ogletree.com

Cynthia A. Bedrick
Jason D. Clark
Jody M. Butts
McNeely Stephenson Thopy & Harrold
2150 Intelliplex Drive, Suite 100
Shelbyville, Indiana 46176
cabedrick@msth.com
jason.d.clark@msth.com
jmbutts@msth.com

Erik C. Johnson
Paul L. Jefferson
McNeely Stephenson Thopy & Harrold
143 West Market Street, Suite 600-A
Indianapolis, Indiana 46204
erik.c.johnson@msth.com
paul.l.jefferson@msth.com

/s/ Joseph E. Schuler
Joseph E. Schuler (DC Bar No. 296269)

4813-2888-0045, v. 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BIOCONVERGENCE, LLC<br>d/b/a SINGOTA SOLUTIONS,<br><br>Plaintiff,<br><br>v.<br><br>JASPREET ATTARIWALA *et al.*,<br><br>Defendants. | Case: 1:19-mc-00205<br>Assigned To : Moss, Randolph D.<br>Assign. Date : 11/27/2019<br>Description: Misc.<br><br>UNDERLYING CASE:<br>S.D. Ind. 1:19-CV-01745 |

## MEMORANDUM IN SUPPORT OF MOTION TO QUASH THIRD PARTY SUBPOENA

Pursuant to Rule 45(d)(3) of the Federal Rules of Civil Procedure and Local Rule 7, Third Party, Emergent BioSolutions, Inc. ("**Emergent**"), respectfully submits this Memorandum in Support of its Motion to Quash Third Party Subpoena.

### Background

This Motion arises out of an action pending in the United States District Court for the Southern District of Indiana. *See BioConvergence, LLC d/b/a Singota Solutions v. Attariwala et al.*, Case No. 1:19-cv-01745 (S.D. Ind.). In the action, the Plaintiff, BioConvergence, LLC d/b/a Singota Solutions ("**Singota**"), brings claims against its former employee, Jaspreet Attariwala, who is currently employed by Emergent. (Amended Compl., ECF 30 ¶¶ 27, 37, attached as Exhibit 1).[1] The claims center around Attariwala's alleged breach of her Employment Agreement with Singota, which prohibits her from disclosing Singota's confidential information and soliciting certain customers or prospective customers of Singota for a period of twelve months following the

---

[1] Singota also brings claims against Attariwala's husband, Simranjit Johnny Singh, but those claims are not relevant to Emergent's motion to quash, as the subpoena requests relate to Emergent's employment of Attariwala. Emergent has never employed Mr. Singh.

termination of her employment. *(Id.* ¶¶ 29-32.) Attariwala's Employment Agreement does not prohibit her from obtaining employment with a Singota competitor. *(Id.* Exh. A.) The claims brought against Attariwala include not only breach of contract but several common law and statutory claims relating to her alleged misappropriation of Singota's confidential and trade secret information. *(Id.* ¶¶ 78-162.)

The action against Attariwala was initially filed in an Indiana state court on February 27, 2019, but was removed by Attariwala to the Southern District of Indiana on April 30, 2019. (ECF 1). On March 4, 2019, while the case was in state court, the parties entered into an Agreed Order for Inspection of Computers and Electronic Information Storage Devices, wherein Attariwala agreed to permit Singota's forensic expert to review her personal computers, hard drives, and other electronic storage devices. (Order of Inspection, attached as Exhibit 2.)  Recently, Singota's forensic expert completed a 217-page report detailing her review of the electronic devices Attariwala used at Singota and several of Attariwala's personal devices. (ECF 85-2.) Portions of this report were redacted purportedly to protect Singota's "customer names and contact information." (ECF 87.)

Emergent—which Singota has characterized as a direct competitor—is not and has never been a party to the action brought against Attariwala. (ECF 30 ¶¶ 37-38.) As far as Emergent is aware, Singota has never discovered any information or documents demonstrating that Attariwala disclosed its confidential or proprietary information to Emergent, despite completing a forensic review of many of Attariwala's work and personal devices and also, presumably, asking Attariwala in discovery whether she ever disclosed such information to Emergent. Additionally, Emergent required Attariwala to sign an agreement at the start of her employment affirming she would comply with the terms of her Employment Agreement with Singota and specifically prohibiting

her from disclosing to Emergent confidential secrets and soliciting Singota customers. (Attariwala Agreement with Emergent, attached as Exhibit 3.) Singota is aware of the Attariwala Agreement, as it is not only referenced in some of its filings in the underlying federal action, but it was also submitted in the record by Attariwala. (*See id.* (copy of agreement as filed in the underlying federal action as ECF 101-3).)

### The Subpoena to Emergent

On November 13, 2019, Singota served a third-party subpoena on Emergent, commanding it to produce documents and things in response to *61* requests. (Singota Subpoena to Emergent ["**Subpoena**"], attached as Exhibit 4). As is discussed in more detail below, the Subpoena is broad in scope and requires Emergent to produce documents and things that would disclose, without meaningful protection, its trade secret and confidential information to Singota. Singota improperly commanded Emergent to produce the documents and things at its counsel's office in Washington, D.C. on November 27, 2019, only 14 days after the Subpoena was served via certified mail.

### Discussion

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, on timely motion, the court of the district where compliance is required *must* quash or modify a subpoena that: "(i) fails to allow a reasonable time to comply . . . or (iv) subjects a person to undue burden." Additionally, the court *may* quash or modify a subpoena if it requires "disclosing a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(d)(3)(B)(i). The decision to quash or modify a subpoena under Rule 45(d)(3) is within the discretion of the district court. *See Watts v. SEC*, 482 F.3d 501, 506-07 (D.C. Cir. 2007) (noting that discovery disputes, including whether to quash a subpoena, is subject to an abuse of discretion review); *In re Szanto*, 2019 U.S. Dist. LEXIS 70409, at *2-3 (S.D. Ind. Apr. 26, 2019) ("As with other

discovery issues, deciding whether to grant a motion to quash lies within the sound discretion of the district court.").

I. **The subpoena fails to provide Emergent reasonable time to comply.**

In determining whether a subpoena "fails to allow a reasonable time to comply, the Court should consider the materials requested and the other underlying circumstances of the particular case." *Ht S.R.L. v. Velasco*, 125 F. Supp. 3d. 211, 230 (D.D.C. 2015); *see also Romano v. City of Hammond Police Dep't*, 2010 U.S. Dist. LEXIS 79166, at *19 (N.D. Ind. Aug. 5, 2010) ("Reasonableness of the time allowed for compliance seems to be judged depending on the underlying circumstances.").

Examples of the exceptional breadth of some of the 61 discovery requests are as follows:

- All documents reflecting any information provided by Attariwala to Emergent at any time identifying any Client[2] or potential Client, including but not limited to entries into any customer/client relationship database or similar system for tracking prospective Clients, entries into any contacts lists, and data loaded onto any computer, smart phone, or other device used by Attariwala. (Exh. 4, Request 7.)

- Produce for inspection all computers used by Attariwala while she has been employed by Emergent. (Exh. 4, Request 12.)

- Produce for inspection all electronic storage devices used by Attariwala while she has been employed by Emergent. (Exh. 4, Request 13.)

- Produce for inspection all devices used by Attariwala during the course of her employment with Emergent to access any email account or cloud account, including, but not limited to, Gmail, Hotmail, OneDrive, DropBox, Googledocs, and Box. (Exh. 4, Request 16.)

- All documents reflecting communications between Attariwala and Patrick DePalma[3] at any time describing Attariwala's actual or anticipated duties on behalf of Emergent. (Exh.

---

[2] "Client" is defined as "any actual or potential customer, buyer, purchaser, or consumer of any product or service offered by or potentially to be offered by *Emergent or Singota*." Accordingly, any requests relating to "Client" seek documents relating not only to Singota's customers but also Emergent's. There is no prohibition on Singota employees having access to Emergent's client list or information about clients that Singota is demanding be disclosed.

[3] Patrick DePalma is Attariwala's supervisor at Emergent.

4, Request 22.)

- Documents sufficient to show all training, "onboarding," and shadowing of others in which Attariwala has engaged during her employment with Emergent. (Exh. 4, Request 30.)

- Documents sufficient to show all duties performed by Attariwala during her employment by Emergent between the date of her hire and the present. (Exh. 4, Request 31.)

- All Documents, including emails, that reflect any information provided by Attariwala to Emergent with respect to any Client or prospective Client for Emergent's services and products. (Exh. 4, Request 34.)

- All Documents, including data, transferred or uploaded to Emergent's electronic storage devices or computer networks at any time by Attariwala or by others reflecting information provided by Attariwala. (Exh. 4, Request 45.)

- All Documents reflecting any work Attariwala has performed or assisted in performing with respect to Clients or prospective Clients, including developing proposals and plans and contributing to, or commenting on, proposals and plans drafted by others. (Exh. 4, Request 51.)

- Documents sufficient to identify all systems and databases used by Emergent to track prospective Clients, including but not limited to systems for client/customer relationship management, project management, and project quoting. (Exh. 4, Request 59.)

Again, the above are only eleven examples to show the breadth of the requests involved; there are an additional 50 requests. Although a party may anticipate 61 document requests in written discovery (and Emergent contends even a party would object to many of these requests), Rule 34 provides a party 30 days to respond. Here, Singota commanded production within only 14 days for requests that require Emergent, which is **not** a party to produce electronic devices and to scour its employees' extensive e-mails and records. The unreasonableness of commanding Emergent to respond to both the number and breadth of the requests in just two weeks should have been obvious, especially considering that the responses are due the day before a holiday when offices and the Court are closed. Because Singota's subpoena fails to allow a reasonable time to comply under the circumstances, the Court should quash it. F. R. Civ. P. 45(d)(3)(A)(i).

## II. The subpoena subjects Emergent to an undue burden.

"The Rule 45 'undue burden' standard requires district courts supervising discovery to be generally sensitive to the costs imposed on third parties." *Watts*, 482 F.3d at 509; *see also Flynn v. FCA U.S. LLC*, 2016 U.S. Dist. LEXIS 165278, at *5 (S.D. Ill. Nov. 30, 2016) (holding that a "nonparty is entitled to 'somewhat greater protection' than would a party" in determining whether a subpoena subjects a person to an undue burden). "When evaluating whether the burden of subpoena compliance is "undue," the court balances the burden imposed on the party subject to the subpoena by the discovery request, the relevance of the information sought to the claims or defenses at issue, the breadth of the discovery request, and the litigant's need for the information." *Call of the Wild Movie, LLC v. Does 1-1,062*, 770 F. Supp. 2d 332, 354 (D.D.C. 2011); *see also Raap v. Brier & Thorn, Inc.*, 2017 U.S. Dist. LEXIS 87004, at *10 (C.D. Ill. June 7, 2017) ("Relevant factors [in deciding whether to quash a subpoena] include whether the recipient of the subpoena is a nonparty, the relevance of the discovery sought, the subpoenaing party's need for the discovery, the breadth of the request, and the burden on the subpoenaed party.").

As discussed below, the above factors demonstrate that the Subpoena imposes an undue burden on Emergent and should be quashed. Among other things, Singota fails to tailor its requests to seek only relevant documents and electronic data and devices that have not otherwise already been produced by Attariwala or that are otherwise available from her as a party in the underlying federal action. They are overly broad, go beyond the scope of Singota's claims against Attariwala, and are unnecessary and harassing to Emergent.

### A. The breadth of the requests is broad, placing a heavy burden on Emergent.

Rule 45(d)(1) places a responsibility on the party serving a subpoena to take "reasonable steps to avoid imposing an undue burden or expense on a person subject to the subpoena." As

discussed above, the sheer number of the requests – 61 in total – combined with the breadth of the requests, demonstrate that Singota failed in its responsibility to ensure the Subpoena did not impose an undue burden or expense on a nonparty. For instance, Request No. 22 seeks "[a]ll documents reflecting any communications between Attariwala and Patrick DePalma at any time describing Attariwala's actual or anticipated duties on behalf of Emergent." Read literally, this request seeks many, if not most, of the communications between Attariwala and DePalma. As her supervisor, the bulk of Mr. DePalma's communications with Attariwala will describe her "actual or anticipated duties," either for that particular day or on specific tasks. Similarly, Request No. 31 requests "[d]ocuments sufficient to show all duties performed by Attariwala during her employment by Emergent between the date of hire and the present." "All duties" is a broad term, essentially unbounded and potentially encompassing all of Attariwala's work communications and product since her employment began with Emergent over nine months ago.

Responding to these requests is a burdensome task requiring Emergent to perform e-mail and other electronic searches on a number of devices and e-mail addresses without the benefit of Singota having provided even search terms for some of its more vague requests, such as asking Emergent for "[a]ll documents relating to Attariwala's allegation that Singota tortiuously interfered with any contract between Emergent and Attariwala." (Exh. 4, Request No. 38). In other words, Singota asks Emergent to produce documents "related" to a claim that it did not bring in an action to which it is not a party without even providing it with a copy of the underlying complaint in which Attariwala presumably makes such an allegation.

Additionally, numerous requests seek documents relating to "Clients" and potential "Clients," which is defined to include both Singota and Emergent clients. *See* Exh. 4, Request Nos. 5, 6, 7, 10, 23, 24, 25, 26, 27, 28, 33, 34, 48, 49, 51, and 58. Yet Emergent does not know

the identities of Singota's clients and potential clients. Emergent's counsel previously requested that Singota provide a list of clients Attariwala could not service under her Employment Agreement (so it could ensure she complied with the Agreement) (*see* ECF 85-3 at 38), but Singota's counsel declined to respond, apparently because it did not want to "provide a list of clients and prospects to its direct competitor." (*See* ECF 85 at 13.) How, then, can Emergent respond to a subpoena seeking documents related to Singota clients and prospective clients? And why, if Singota believes it would be inappropriate to identify its clients to Emergent, does it make requests requiring Emergent to produce documents that would identify its clients and prospects to Singota? These requests are burdensome, not only because Emergent is unable to respond (to the extent of not having necessary information to support its response because Singota refuses to disclose its clients), but because they request information about Emergent's clients, despite Singota's irreconcilable position that information related to *its clients* is confidential.[4]

Keeping in mind that the Court must be "sensitive to the costs [of discovery] imposed on third parties," the bar for Singota to demonstrate that its need for this broad discovery outweighs Emergent's burden should be high. For the reasons discussed below, Singota cannot demonstrate that its need outweigh Emergent's burden.

**B.   The requests are not tailored to seek only relevant documents and things.**

The limitations on discovery found in Rule 26(b)(1) and (2) apply to "all discovery," including third party subpoenas. *Watts*, 482 F.3d at 509; *see also Gouse v. District* of Columbia, 359 F. Supp. 3d 51, 56 (D.D.C. 2019) ("If a subpoena compels disclosure of information that is not properly discoverable, then the burden it imposes, however slight, is necessarily undue."). In

---

[4] While the parties to the underlying case entered in a protective order which includes a procedure for third parties to designate information and documents as "confidential," it explicitly allows Singota's counsel to share all information and documents produced in the matter with Singota, thereby eliminating any protection for Emergent's confidential and proprietary information.

8

recent years, Rule 26 was amended to further limit discovery based on the concept of proportionality. Discovery may not be had if "the burden or expense of the proposed discovery outweighs its likely benefit," taking into account "the needs of the case . . . the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, [and] the importance of the discovery in resolving the issues." *See* Rule 26(b)(1).

When read overall, Singota's requests appear to be directed towards discovering whether Attariwala ever shared any confidential information with Emergent. But the underlying case has been ongoing since February 2019, with extensive discovery completed, including Attariwala's production of electronic devices and her granting access to her private e-mail accounts for forensic review by Singota. Yet it does not appear Singota has uncovered any information though discovery or any other investigation available to it showing Attariwala breached her Employment Agreement by sharing confidential information with Emergent. Accordingly, Emergent is now the subject of an improper fishing expedition by Singota. "The discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable *without discovery*, not to find out if it has any basis for a claim." *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1327 (D.C. Cir. 1990) (emphasis in original). "That the discovery might uncover evidence showing that a plaintiff has a legitimate claim does not justify the discovery request." *Id.* In other words, "mere suspicion" that evidence exists is not sufficient to request extensive information from a third party. *Id.* (holding discovery requested of a third party should be denied as not meeting the relevancy requirement of Rule 26, because it was based on merely speculative inquiries). The impropriety of speculative fishing expeditions is particularly apposite here, in light of the amount of discovery that has already occurred between the parties in the underlying action, including extensive forensic reviews that

9

Emergent understands do <u>not</u> show breach by Attariwala of her Employment Agreement.

What Singota actually is doing, in part, is fishing based on its "mere suspicion" that Emergent engaged in improper use of its confidential information. This is clear in Requests Nos. 37 and 39-40, which seek documents relating to Emergent's efforts to "safeguard [Singota's] trade secrets." Emergent's "efforts" are irrelevant to Singota's claims against Attariwala. This is not a proper use of a third-party subpoena. *See Couponcabin, LLC v. Savings.com, Inc.*, 2017 U.S. Dist. LEXIS 19045, at *3-6 (N.D. Ind. Feb. 10, 2017) (quashing a subpoena, because it was directed towards determining whether there was a basis to sue the third party to whom the subpoena was directed, rather than seeking information relevant to the claims in the litigation).

Additionally, as discussed above, numerous requests seek information relating to *Emergent's* clients. Singota has no basis to request such confidential and proprietary information. Attariwala's Employment Agreement prohibits her from soliciting "any customer or prospective customer as to which, during the 12 months immediately preceding the date of termination, Employee (i) engaged in any solicitation, sales activity, or other direct contact . . . on behalf of the Company; (ii) performed any duties or services on behalf of the Company; and/or (iii) received any Confidential Information." Her agreement does not prohibit her from servicing a client who does not meet these definitions. Yet Singota seeks information such as "[a]ll documents, including emails, provided by Attariwala to Emergent after February 11, 2019, identifying any Client or potential Client" (Request 6) or "[a]ll documents reflecting any work Attariwala has performed or assisted in performing with respect to Clients and prospective Clients . . . ." (Request 51). Again, these requests are not limited to discovering whether Attariwala performed any work for clients covered by the Employment Agreement but instead requires Emergent to identify any work Attariwala has performed for *Emergent* clients. These requests are overly broad as they seek

information irrelevant to Singota's claims. As noted above, the underlying protective order in the Indiana federal action provides no protection for Emergent, should it have to produce the proprietary information requested.

Perhaps most egregious is that many of the requests require Emergent to produce computers and "electronic storage devices" used by Attariwala during her employment with Emergent. (Exh. 4, Request Nos. 12 & 13.) Additionally, Request No. 45 seeks "[a]ll documents, including data, transferred or uploaded to Emergent's electronic storage devices or computer networks at any time by Attariwala or by others reflecting information provided by Attariwala." These requests are overreaching, as Emergent's computers, electronic devices, and "storage devices" will contain enormous amounts of information wholly irrelevant to Singota's claims and that is otherwise confidential and proprietary. Singota seeking such irrelevant and confidential information weighs in favor of finding that the Subpoena imposes an undue burden on Emergent.

### C. Singota can obtain much of this information from Attariwala.

Finally, Singota's need for the information sought by the Subpoena is questionable, considering many of the documents and other information could have been obtained from Attariwala. For example, Singota requests all documents received by Emergent from Attariwala prior to February 11, 2019 (Request No. 1); all documents sent by Emergent to Attariwala prior to February 11, 2019 (Request No. 2); documents relating to Attariwala's hiring (Request No. 4); the job title and description sent to Attariwala by DePalma in October 2018 (Request No. 8); and all agreements between Emergent and Attariwala, including any indemnification agreements or agreement to pay attorney's fees (Request Nos. 32 & 55-56). Although these requests are less broad than others, they could have easily been directed towards Attariwala, making them redundant and unduly burdensome. *See Watts*, 482 F.3d at 509 (in considering whether a subpoena

imposes an undue burden, courts should consider whether the discovery sought is "obtainable from some other source that is more convenient, less burdensome, or less expensive"); *see also Flynn*, 2016 U.S. Dist. LEXIS 165278, at *7 (holding that seeking documents from a nonparty that could have been obtained by a party constitutes an undue burden on the nonparty).

### III. The subpoena requires Emergent to disclose its trade secret and other confidential commercial information.

As noted above, the Court should quash the Subpoena, because it requires Emergent to disclose its trade secret and other confidential information. To determine whether information is protected by Federal Rule of Civil Procedure 45, a court must evaluate "whether the information being sought is commercial information that should not be disclosed to the public." *Elise Trust v. United States Securities and Exchange Commission*, 2011 U.S. Dist. LEXIS 157867, at *8 (D.D.C. Jan. 10, 2011). "Typically, Rule 45 protects only sensitive commercial information or trade secrets that, if disclosed, would impair the company's ability to compete in the marketplace." *Id.* Courts should consider not only the content of the information, but to whom the information will be released. *Id.*

Many of the Subpoena requests will require Emergent to produce its confidential commercial information to Singota, a direct competitor of Emergent. For instance, as previously discussed, the requests require Emergent to produce documents identifying its clients and prospective clients. Notably, Singota has taken the position that the identify of its clients and prospective clients is confidential, refusing to provide it to Emergent and redacting the identities of its clients in its expert report. (*See* ECF 85 at 13.) Singota should not permitted to seek this same information from Emergent. Additionally, the Subpoena seeks Emergent's training documentation (Request No. 29), job descriptions (Request No. 9), and "documents sufficient to show all services and products of Emergent which Attariwala has had any involvement directly or

12

indirectly in offering to Clients . . . . (Request No. 10). Even more broadly, the Subpoena seeks "[a]ll documents, including data, transferred or uploaded to Emergent's electronic storage devices or computer networks at any time by Attariwala or by others reflecting information provided by Attariwala" (Request No. 45) and "documents sufficient to show all accounts Emergent has provided or given access to Attariwala that allow for the storage of data, including but not limited to email accounts, cloud accounts (both internal and external), customer/client relationship management systems, project management systems, client management systems, and project quoting systems." (Request No. 54.) Finally, as discussed above, the Subpoena requires Emergent to produces all computers and electronic storage devices Attariwala has used during her employment. (Request Nos. 12-13.) These requests are improper, as they require Emergent to produce sensitive commercial information to a direct competitor.

Singota may reply that Emergent is protected by the protective order in the underlying action, which it attached to the Subpoena. As noted above, however, that protective order is insufficient to ensure Emergent's confidential information is not used to a competitive advantage, especially because the definition of the "attorney's eyes only" designation includes permitting employees of Singota to review produced information, as long as Singota's counsel is present. Because the subpoena requires Emergent to disclose trade secret and other confidential commercial information *to a direct competitor*, the Court should quash the subpoena. *See, e.g., Weather Shield Mfg. v. Drost*, 2017 U.S. Dist. LEXIS 218036, at *3 (W.D. Wis. Nov. 16, 2017) (quashing a subpoena seeking "every computer . . . or other electronic device . . . provided by an employer to the defendant because it imposed an undue burden on the employer and sought disclosure of trade secrets).

## Conclusion

Based on the foregoing, Emergent respectfully requests an Order quashing the Subpoena served on it by Singota on November 13, 2019.

In the alternative, pursuant to Rule 45(f) of the Federal Rules of Civil Procedure, Emergent respectfully requests that this Court transfer this Motion for decision to the United States District Court for the Southern District of Indiana, Hon. Sarah Evans Barker, the court in which the underlying litigation is pending. *See, e.g., Lipman v. Antoon*, 284 F.Supp.3d 8, 10-13 (D.D.C., 2018) (holding, *inter alia*, that transfer is the preferred course when taking into account such factors as the preferences of the nonparty that is subject to the subpoena, and when a reviewing court that is not familiar with the intricacies of the underlying action nor responsible for the discovery schedule in that case would otherwise have to determine the relevance of the documents and information sought by the challenged subpoena, including whether the requests are an unwarranted fishing expedition in support of other claims).

Respectfully submitted,

*Joseph E. [signature]*

Joseph E. Schuler (DC Bar No. 296269)
Email: schulerj@jacksonlewis.com
JACKSON LEWIS P.C.
10701 Parkridge Boulevard, Suite 300
Reston, Virginia 20191
Telephone: (703) 483-8300
Facsimile: (703) 483-8301
*Counsel for Emergent BioSolutions, Inc.*