# EXHIBIT NO. 1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| BIOCONVERGENCE LLC d/b/a SINGOTA SOLUTIONS | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 1:19-cv-01745-SEB-TAB |
| JASPREET ATTARIWALA AND SIMRANJIT JOHNNY SINGH a/k/a SIMRANJIT J. ATTARIWALA a/k/a SIM J. SINGH, | ) ) ) ) | |
| Defendants. | | |

**FIRST AMENDED VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF
AND DAMAGES AND JURY DEMAND**

Plaintiff, BioConvergence LLC d/b/a Singota Solutions ("Plaintiff" or "the Company"),

by counsel, and for its First Amended Verified Complaint against Defendants Jaspreet Attariwala

(formerly known as Jaspreet Saini) ("Attariwala") and Simranjit Johnny Singh a/k/a Simranjit J.

Attariwala a/k/a Sim J. Singh (hereinafter "Singh"), (collectively, "Defendants") alleges as

follows:

**PARTIES**

1.      The Company is an Indiana limited liability company with its principal place of

business at 4320 West Zenith Dr., Bloomington, Indiana 47404.

2.      Attariwala is a former employee of the Company. During her employment with

the Company, Attariwala lived and worked in Morton Grove, Illinois and Washington D.C.

Upon information and belief, Attariwala presently resides in Washington D.C.

3.      Singh is Attariwala's husband and, upon information and belief, resides in

Washington D.C.  Singh is a practicing attorney.

## JURISDICTION

4.      This Court has original jurisdiction of this action pursuant to the Defend Trade

Secrets Act, 18 U.S.C. § 1836(c), and 28 U.S.C. § 1331. This Court also has federal question

jurisdiction because this lawsuit alleges violations of the Computer Fraud and Abuse Act

("CFAA"), 18 U.S.C. § 1030. This Court has supplemental jurisdiction over the other state-law

claims asserted herein pursuant to 28 U.S.C. § 1367.

5.      During her employment with the Company, Attariwala executed an Employment

Agreement, which is attached as Exhibit A and incorporated by reference.

6.      This Court has personal jurisdiction over Attariwala pursuant to Attariwala's

Employment Agreement. That agreement provides that "any disputes arising under this

Agreement and/or any action brought to enforce this Agreement may be brought in a state court

of competent jurisdiction in Monroe County, Indiana, or in the federal court for the Southern

District of Indiana, and the parties consent to personal jurisdiction of such courts and waive any

defense of forum non conviens." Exhibit A, ¶ 14.

7.      This Court has personal jurisdiction over Singh because Singh's intentional

tortious conduct to receive and wrongfully possess the Company's data and property, and his

conspiracy to aid Attariwala, harms the Company in Indiana and the Southern District of Indiana.

8.      The Company is physically located in Monroe County, Indiana. The majority of

the Company's employees work in Indiana. The Company pays Indiana payroll, sales, and use

taxes.

9.      Throughout the relevant time period, the Company's computer file servers have

been located in Indiana. To access the Company's file servers, Attariwala logged into them

through a terminal server located in Indiana. Attariwala emailed and transferred Company

2

documents, data, and property to Singh, who has refused and continues to refuse to return such documents, data, and property to the Company.

10.    Based on Singh's marriage to and association with Attariwala, who throughout much of the relevant time was an employee of the Company, Singh had knowledge that his actions would harm the Company's operations in Indiana and his actions were and are intended to cause such harm.

11.    In addition, on March 1, 2019, and March 4, 2019, Singh was physically present in the courtroom in Monroe Circuit Court 1 in Bloomington, Indiana, when that court conducted a preliminary injunction hearing in this case. By the testimony presented during that hearing in his presence, Singh was placed on notice that his intentional actions in receiving, continuing to possess, and failing and refusing to return Singota data and property and the data and property of Singota's clients and prospective clients causes Singota harm in Indiana. Upon information and belief, Singh's intentional actions are purposefully aimed at Indiana with his knowledge that the effects of his actions would be felt in Indiana.

12.    On or about March 11, 2019, Attariwala and Singh provided multiple electronic storage devices containing Singota property and data to a court-appointed computer forensic expert, Rebecca Green, who is located in Greenfield, Indiana. Those devices remain in Ms. Green's custody in the Southern District of Indiana. Singh has demanded the return of at least one of those devices from the computer forensic expert despite the device's continuing to contain Singota data and property.

13.    Upon information and belief, Singh has retained counsel in Indiana. On or about April 5, 2019, Singh through his Indiana-based counsel informed Singota's Indiana-based

counsel that he refused to cooperate in returning additional Singota property and data in his possession, custody, or control.

14.   By receiving the Company's data and property from Attariwala and by refusing to return it to the Company, Singh is acting in concert and participation with Attariwala to harm the Company in Indiana and intends such harm.

## VENUE

15.   Venue in this Court is proper pursuant to Attariwala's Employment Agreement, which provides that "any disputes arising under this Agreement and/or any action brought to enforce this Agreement may be brought in a state court of competent jurisdiction in Monroe County, Indiana, or in the federal court for the Southern District of Indiana, and the parties consent to personal jurisdiction of such courts and waive any defense of forum non conviens." Exhibit A, ¶ 14.

16.   Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b) because the Company's principal office is located in the Southern District of Indiana and because a substantial part of the events giving rise to the Company's claims occurred in this district

## FACTS

### The Company's business and confidential information

17.   The Company is a women-owned small business and was formed in 2004 as an Indiana limited liability company. It has been headquartered and operating in Monroe County, Indiana since its inception.

18.   The Company offers and performs services regulated by the United States Food and Drug Administration ("FDA") for clients in the pharmaceutical, biotechnology, animal health, and medical device industries. The Company's services primarily relate to sterile products that must be administered by injection. The Company performs these services for its

clients as a contract development and manufacturing organization sometimes referred to as a CMO or CDMO.

19.     Many other companies around the nation and the world also provide CDMO services and compete with the Company, including several companies located in Monroe County. Some CDMOs focus their sterile product capacity on serving clients with late-stage research-and-development and commercial products that require large-scale capacity equipment. Other CDMOs, like the Company, focus their sterile product capacity on serving clients with early-to-mid- and late-stage research-and-development and commercial products that require small-scale capacity equipment.

20.     The Company's services include (a) product and analytical development; (b) production including formulation, filling, finishing, labelling, and kitting; (c) analytical and microbial quality control and stability testing; and (d) supply chain management including receiving, storing and shipping under more than twenty (20) environmental conditions from -80 degrees Celsius to 40 degrees Celsius.

21.     Upon information and belief, the Company was the first company in the United States and North America to purchase, install, validate, develop and clear FDA-regulatory hurdles for its production filling services utilizing certain innovative technology provided by the Vanrx SA25 ("SA25"). This innovative equipment is a gloveless closed robotic aseptic filling workcell used to fill vials, syringes, and cartridges. In recent years, the Company has continued developing strategies for expanding its services, including expanding its lyophilization services.

22.     The Company's clients and prospective clients include top-20 pharmaceutical, biotechnology, medical device, and animal health companies as well as about 500 virtual, small, and midsize companies from the life sciences sector.

23.    The stakes are often high for life sciences companies. The period from discovery to commercialization can take over ten years and on average costs more than $1,000,000,000. If such a company fails to reach the market first with its product, it may lose the opportunity to obtain any return on its expensive and time-consuming investments.

24.    The Company's clients and prospective clients are rightly concerned about maintaining confidentiality concerning their products. To be considered for work with each client and prospective client, the Company is required by them to enter into client-specific written confidentiality agreements with strict terms governing the receipt, sharing (only on a need-to-know basis), storage, retention, security, protection, and return of confidential and proprietary information and trade secrets (together, "Protected Information").

25.    The Company's, its clients' and its prospective clients' Protected Information has tremendous value and, if misappropriated, could be misused by competitors to reverse engineer a product or otherwise wrongfully benefit from scientific discoveries and other intellectual property that the originator alone owns.

26.    In turn, to be considered for employment with the Company, and due in part to the client confidentiality requirements, each prospective employee of the Company must enter into an offer letter agreement, a job description agreement, and an employment agreement (collectively, "Pre-Employment Agreements"). These Pre-Employment Agreements govern Protected Information in terms similar to the Company's most stringent client confidentiality agreements, which may require confidentiality be maintained for up to twenty (20) years following the end of any contract term.

**Attariwala's employment by the Company and employment agreement**

27.     In September 2015, the Company hired Attariwala to work as a Senior Business Development Manager for Plaintiff, and she was responsible for promoting the Company's business and generating new projects on the Company's behalf. Attariwala signed her offer letter and job description on or about September 29, 2015, which are attached hereto as Exhibits B and C, respectively, and incorporated herein. *See also* Exhibit A (her employment agreement).

28.     According to the resume Attariwala provided to Plaintiff at the time of her application, Attariwala had worked in the healthcare and life sciences industries since 1999 or for more than fifteen years. According to Attariwala's resume, she previously worked in life sciences focused on "implementing a software-as-a-service (SaaS) platform to optimize the due diligence process of mergers and acquisitions, asset sales, IPOs, fundraising, licensing, partnering and data warehousing."

29.     Attariwala, like the Company's other employees, was required to enter into an Employment Agreement.

30.     Paragraph 6 of Attariwala's Employment Agreement contains non-solicitation requirements and provides:

> During Employee's employment with the Company and for a period of twelve (12) months (which shall be extended by the length of any period during which Employee is in violation of this section) immediately following the termination of Employee's employment for any reason, Employee (on Employee's own behalf or that of any other person or entity) shall not directly or indirectly sell or otherwise provide or solicit the sale or provision of any product or service that competes directly or indirectly with any business of the Company to any customer or prospective customer or prospective customer as to which, during the 12 months immediately preceding the date of termination, Employee (i) engaged in any solicitation, sales activity, or other direct contact (in person, in writing, by telephone or electronically) on behalf of

> the Company; (ii) performed any duties or services on behalf of the Company; and/or (iii) received any Confidential Information.

Exhibit A, ¶ 6.

31.   Paragraph 4(a) of Attariwala's Employment Agreement defines "Confidential Information" as follows:

> [A]ny proprietary, confidential, or company-sensitive information and materials which are the property of or relate to the Company or business of the Company. Confidential Information shall include without limitation all information and materials created by, provided to, or otherwise disclosed to Employee in connection with Employee's employment with the Company (excepting only information and materials already known by the general public), including without limitation (i) trade secrets, (ii) the names and addresses of the Company's past, present or prospective contributors, beneficiaries or business contacts, and all information relating to such contributors, beneficiaries, or business contacts, regardless of whether such information was supplied or produced by the Company or such contributors, beneficiaries, or business contacts; and (iii) information concerning the Company's affiliates, financing sources, profits, revenues, financial condition, fund raising activity, and investment activity, business strategies, and software used by the Company and associated layouts, templates, processes, documentation, databases, designs and techniques.

Exhibit A, ¶ 4(a).

32.   Paragraph 4(b) of Attariwala's Employment Agreement requires Attariwala to maintain the secrecy of Confidential Information and provides that:

> Employee (i) shall use Confidential Information *solely in connection with Employee's employment with the Company*; (ii) shall *not directly or indirectly disclose, use or exploit any Confidential Information for Employee's own benefit or the benefit of any other person or entity*, other than the Company, *both during and after* Employee's employment with the Company or as required by law; and (iii) shall hold Confidential Information in trust and confidence, and use all reasonable means to assure that it is not directly or indirectly disclosed to or copied by unauthorized persons or used in an unauthorized manner, *both during and after Employee's employment with the Company*.

Exhibit A, ¶ 4(a) (emphasis added).

33.     In Attariwala's role as the Company's senior business development manager, she had access to substantial information for purposes of generating business on behalf of the Company. She had access to current and prospective client lists, business strategies, and information regarding the products and services offered by the Company, including technical manuals, supplier information, sales reports, pricing, proprietary processes, techniques, and methods, and other proprietary and confidential business information. She had access to Protected Information as defined in the Company's CDAs with its clients and prospective clients and Confidential Information as defined in her Employment Agreement.

34.     All of this information is held in confidence by the Company, and the value of the information is based on this confidentiality. Access is intentionally limited to a subset of the Company employees.

35.     While employed by the Company, Attariwala, among other things, promoted all of the Company's services, including its aseptic filling capabilities. Aseptic filling is the process of ensuring that sterilize products are formulated, filled and packaged into sterile containers under sterile conditions. In this process, the Company utilizes the Vanrx SA-25 work-cell system.

36.     In the course of her employment with the Company, Attariwala was trained, negotiated and executed confidentiality agreements on behalf of the Company with the Company's clients and prospective clients, binding the Company to maintain confidentiality of their Protected Information.

### Attariwala's resignation to work for a competitor
### and the Company's discovery of her misconduct

37.    After being employed by the Company for over three years, Attariwala, on or about December 18, 2018, provided formal notice of her resignation from the Company. Upon information and belief, Attariwala had already previously accepted an offer to work at Emergent BioSolutions, Inc. ("Emergent").

38.    Emergent provides the same CDMO services as the Company to clients in the same industries. Upon information and belief, Emergent, like the Company, utilizes the Vanrx SA-25 work cell system and standard filling technology to provide aseptic filling services.

39.    In January 2019, the Company discovered that Attariwala, while still employed by the Company in December 2018, had engaged in improper communications with Company clients and prospective clients.

40.    Specifically, the Company discovered that in December 2018, while still employed by the Company, Attariwala began soliciting the Company's clients and prospective clients on behalf of her new employer. *See* Exhibit D, Declaration of Melanie Lewis ¶¶ 5-7. Attariwala contacted certain of the Company's clients and prospective clients to let them know that she was leaving the Company to join Emergent and would contact them again in January once she had begun her new position with Emergent. Attariwala also shared information about Emergent's competitive aseptic filling capabilities with at least one of the Company's clients using the Company's email system. *Id.*

41.    Upon discovery of these improper communications, the Company promptly informed Attariwala, through her counsel, of the Company's concerns. The Company demanded that Attariwala comply with the terms of her Employment Agreement and that she immediately identify all Confidential and Proprietary Information that Attariwala accessed or possessed and

identify each instance in which Attariwala had utilized such information. Plaintiff also demanded that Attariwala execute an affidavit and submit her computer for review. Exhibit D, ¶ 8 & Ex. 3 (Ltr. from C. Murray to J. Butts dated Jan. 18, 2019).

42.     Following the Company's January 18, 2019, letter, the parties conducted discussions for several weeks, during which Attariwala failed to acknowledge her misconduct. Moreover, Attariwala failed to comply with the Company's demand that she disclose what Confidential Information of the Company she retained following her resignation. Exhibit D, ¶ 9.

43.     In light of Attariwala's refusal to comply with the Company's January 18, 2019 letter, the Company continued its investigation of potential misconduct by Attariwala.

44.     The Company discovered additional misconduct by Attariwala. Through its investigation to date, the Company has learned that Attariwala forwarded large amounts of the Company's Confidential Information and Protected Information to her personal email address. Exhibit D, ¶¶ 10-16.

45.     For example, on March 14, 2017, Attariwala forwarded a file entitled "2017.01.09 POR_Meeting Minutes_Singota_Final_Signed" from her Company email account to her personal email account. This document is a lengthy memorandum provided to the FDA regarding the Company's aseptic manufacturing capabilities. This information is extremely important to the Company and economically valuable in the market.  Exhibit D, ¶ 13.

46.     On May 4, 2018, Attariwala also emailed a confidential client agreement from her Singota email address to an account with the email address, Simjsingh@gmail.com, which belongs to Attariwala's husband, Singh. There was no legitimate business reason for Attariwala to send this email without authorization from her Singota email account to her husband.

47.     In addition, Attariwala shares with her husband, Singh, another personal email account with the address of simandjessie@gmail.com. On June 19, 2018, at 10:02 PM, Attariwala sent an email from this email account with the subject line, "Singota Manufacturing Questionnaire 2018_PT_vF.docx" to Singh's email account, Simjsingh@gmail.com. This email attached a client manufacturing questionnaire containing highly confidential information relating to a Singota client. There was no legitimate business reason for Attariwala to send this email without authorization from her personal email account to her husband.

48.     Moreover, upon information and belief, Attariwala was seeking employment with Emergent in 2018, and during this time period, Attariwala took Singota information, data, and property without authorization to use for her own benefit and that of her future employer to compete with Singota.

49.     Attariwala, shortly before she submitted her resignation to the Company, forwarded Confidential Information about the Company's clients, prospective clients, processes, and business practices from her Company email account to her personal email account.

50.     On November 19, 2018, for example, Attariwala forwarded from her Singota email account to her personal email account at jsaini1@gmail.com an email with the subject line "FW: Aseptic Filling & Injectables Total Market Share/Total Market Value," which contained attachments and confidential information relating to Singota's business development strategies.

51.     On November 22, 2018, Attariwala forwarded from her Singota email account to her personal email account at jsaini1@gmail.com an email with the subject line "Fwd: [Redacted] Freeze-dried potent API 10mL vials – RFI." This email contained confidential information relating to a potential client's business and a business opportunity provided to Singota.

52.    On November 30, 2018, at a time when Attariwala was still employed by the Company, Attariwala sent an email from her personal email address, jsaini1@gmail.com, to Patrick DePalma, who is the CMO Business Development Director at Emergent, at the email address pdepalma@ebsi.com. Attariwala's email provided information to DePalma and Emergent, a competitor of Singota, about a business opportunity and with the subject line, "Potential Lyo Lead." This email appears to be the same Company information that Attariwala emailed from her Singota email account to her personal email address on November 22, 2018. Attariwala was not authorized by Singota to provide this confidential information and business opportunity to Singota's competitor or to use it for her own benefit.

53.    On December 11, 2018, Attariwala also forwarded several other files containing Confidential Information about the Company's aseptic filling and other processes from her Company email account to her personal email account.

54.    For example, on December 11, 2018, at 3:20 PM and 3:22 PM, Attariwala forwarded from her Singota email account to her personal email account at jsaini1@gmail.com two emails with the subject line, "FW: DCAT" and "FW: DCAT Update," which contained confidential information regarding upcoming meetings between Singota representatives and prospective clients and contact client information.

55.    Also on December 11, 2018, at 3:25 PM, Attariwala forwarded a file entitled "Boston Area BD Contacts" from her Company email to her personal account. This file contains Confidential Information and a list of more than one hundred Company business development contacts in the Boston, Massachusetts area. The Company hired Eric Smart, a business development consultant, to assist the Company with developing and analyzing these contacts. The list includes additional information about prospective clients, such as the type and number of

drugs the business contact was developing. The Company does not disclose this information to clients, limits access to the document, and holds it in confidence. Exhibit D, ¶ 14.

56.    Also on December 11, 2018, at 3:31 PM, Attariwala forwarded from her Singota email account to her personal email account at jsaini1@gmail.com an email with the subject line, "FW: Client Checklist." This email contained information regarding Singota's client initiation procedures.

57.    Also on December 11, 2018, at 3:40 PM, Attariwala forwarded from her Singota email account to her personal email account at jsaini1@gmail.com an email with the subject line, "FW"[Redacted]," which contained confidential information concerning a prospective client and a Singota business opportunity.

58.    Also on December 11, 2018, at 4:04 PM, Attariwala forwarded from her Singota email account to her personal email account at jsaini1@gmail.com an email with the subject line, "Jessie contacts," which included the contact information for significant Company clients and prospective clients and included companies doing business in the sales territory in which Attariwala would apparently be assigned at Emergent. Exhibit D, ¶ 16.

59.    Also on December 11, 2018, between 8:47 PM and 8:58 PM, Attariwala accessed the Company's confidential customer relationship management ("CRM") database called Pipedrive and generated multiple reports containing extensive confidential and proprietary information regarding Singota's clients and prospective clients. Upon information and belief, Attariwala generated and copied these reports without authorization to use for her own benefit and the benefit of her future employer.

60.     Throughout the remainder of her employment by Singota, Attariwala continued to forward emails from her Singota email account containing confidential Company information, data, and property to her personal email account at jsaini1@gmail.com.

61.     In short, Attariwala forwarded from her Company email to her personal email account Confidential Information and Protected Information concerning hundreds of the Company's clients, prospective clients, and business contacts, wrongly used the Company's own email system and Confidential Information to attempt to divert clients and prospective clients to a competitor. Attariwala has misappropriated Protected Information, including that relating to the Company's Vanrx SA25 technology.

62.     In addition, in December 2018, Attariwala connected multiple USB devices and a large external hard drive to her Singota computer. Upon information and belief, Attariwala copied Singota confidential information, data, and property to those devices without authorization with the intent to retain and use that information, data, and property for her own benefit and the benefit of her future employer after leaving Singota's employment.

63.     In addition, after December 11, 2018, Attariwala accessed dozens of files on Singota's computer systems containing confidential information. Upon information and belief, Attariwala accessed and copied these documents without authorization from Singota's computer systems to use for her own benefit and the benefit of her future employer after leaving Singota's employment.

64.     In addition, after giving notice of her resignation from Singota but while she was still employed by the Company, Attariwala, on or about December 19 and 20, 2018, accessed Singota documents titled, "Leads Biopharm insight US companies 2018.xls," "Leadsheet USA lyo 2018.xlsx", and "Lyo clients.xlsx," among others. Upon information and belief, Attariwala

15

accessed and copied these documents without authorization from Singota's computer systems to use for her own benefit and the benefit of her future employer after leaving Singota's employment.

65.     In addition, on December 19, 2018, Attariwala created ".pst" files of her Singota email account. Upon information and belief, these ".pst" files contain hundreds or thousands of emails sent and received by Attariwala using her Singota email account. These emails contain massive amounts of confidential Singota information and confidential information belonging to Singota's clients and prospective clients, including confidential attachments.

66.     In addition, on December 19, 2018, Attariwala accessed a folder on her Singota computer titled "Emergent docs." By this date, Attariwala had provided her resignation notice to Singota and, upon information and belief, had received and accepted an offer of employment from Emergent. When Attariwala returned her Singota computer to Singota, the "Emergent docs" folder no longer existed on it.

67.     In addition, upon information and belief, by 2018, Attariwala installed without seeking or being granted authorization a cloud account called Dropbox on her Singota computer. Upon information and belief, Attariwala used this cloud account to copy Singota confidential data, documents, and property without authorization from Singota's computer systems to use for her own benefit and the benefit of her future employer after leaving Singota's employment.

68.     On or about March 11, 2019, Attariwala and Singh produced a MacBook computer to court-ordered computer forensic expert Green that they represented belonged to Singh. In analyzing the MacBook, Green received over 10,000 hits when running a keyword search on the terms "singota," "bioconvergence" and "bioc." She also identified a user account on the MacBook named "jessie" that contained email and calendar items with hundreds of hits

on the term "Singota." Green also found numerous email accounts on the MacBook that had not been disclosed to her by Attariwala.

69.    On or about March 22, 2019, Green requested through Attariwala's counsel that the password for the simjsingh@gmail.com account be provided so that Green could identify and recover Singota confidential information from that account, including the client manufacturing questionnaire emailed to that account by Attariwala on June 19, 2018.

70.    On April 5, 2019, Attariwala's and Singh's counsel informed Green and counsel for Singota that Singh was "done" cooperating with Green's investigation. Their counsel demanded that Green immediately overnight the MacBook to the Attariwala and Singh, even though it contained thousands of hits for Singota information. Attariwala's counsel also stated that Attariwala and Singh refused to provide Green the password for the "simjsingh@gmail.com" email account, even though Green had identified a Singota client document emailed to that account from the simandjessie@gmail.com email account in June 2018. Attariwala and Singh also refused and failed to provide Green passwords for many of the other email accounts that Green had discovered on the MacBook to allow Green to identify and recover Company information.

71.    Singh's refusal to cooperate with Green and refusal to provide a password for the simjsingh@gmail.com prevents the Company from determining what Singh did with the Company's confidential information or recovering it from Singh.

72.    Attariwala did not request and was not authorized (and would not have been authorized) by the Company to disclose any Confidential Information to, or to share the Company's confidential information, data, or other property with, Singh. Nor did Attariwala ever

provide notice to the Company that she had disclosed such confidential information to Singh or any other third-party.

73.    Further, according to publicly available information, Attariwala's new employer has purchased a Vanrx SA25 machine similar to that used by the Company. Exhibit D, ¶ 18. The Confidential Information and Protected Information that Attariwala misappropriated from the Company can be misused by Attariwala to support her new employer's use of this equipment and provision of other services to Emergent's clients, resulting in unfair competition and harm to the Company.

74.    The Confidential Information misappropriated by Defendants relates to highly valuable trade secrets and key components of the Company's business built through its thirteen years of experience in the CDMO business. The information accessed and misappropriated by Attariwala would be extremely useful to her in her new role competing against the Company while working for her new employer.

75.    By misappropriating Confidential Information and Protected Information, Attariwala has put herself into a position to unfairly compete against the Company, threatening to cause it significant irreparable harm.

76.    Attariwala's and Singh's deliberate and repeated actions in wrongfully taking, retaining, and refusing to return Confidential Information and Protected Information requires the Company, pursuant to its own confidentiality agreements with its clients, to incur the expense and burden of providing legal notice as appropriate to its clients and prospective clients of Attariwala's breaches of the confidentiality obligations owed to them.

77.     The Company brings this civil action to obtain injunctive relief to prevent Defendants from continuing to inflict irreparable harm upon the Company and from reaping any reward from their wrongful actions and to obtain monetary damages to the extent calculable.[1]

## COUNT I—BREACH OF CONTRACT
### (Attariwala)

78.     The Company incorporates its allegations in the foregoing paragraphs as if fully set forth herein.

79.     The Employment Agreement that Attariwala entered with the Company is a valid and enforceable contract, and the Company fully performed all conditions, covenants, and obligations on its part to be performed under the terms of the Employment Agreement.

80.     Attariwala breached the Employment Agreement by accessing, copying, duplicating, and taking without authorization the Company's Confidential Information and Protected Information.

81.     The Employment Agreement provided that Attariwala would not disclose Confidential Information, would use Confidential Information solely in furtherance of Attariwala's duties as an employee of the Company, and would not disclose, communicate, or make use of Confidential Information on Attariwala's behalf or on behalf of a Third Party.

82.     Attariwala breached the Employment Agreement in various ways including by taking, copying, and maintaining possession of electronic and/or physical documents containing Confidential Information and Protected Information and using or intending to use such information for her own benefit and the benefit of one of Company's competitors,.

---

[1] On March 4, 2019, a Stipulated Preliminary Injunction Order and an Agreed Order for Inspection of Computers and Electronic Information Storage Devices ("Inspection Order") were entered in this case. On March 18, 2019, a Supplemental Order Following Preliminary Injunction was entered. The Stipulated Preliminary Injunction Order applies to "Attariwala, and anyone acting in concert or participation with her" and sets out, in detail, certain

83.     The Employment Agreement also provided that Attariwala would not "not directly or indirectly sell or otherwise provide or solicit the sale or provision of any product or service that competes directly or indirectly with any business of the Company to any customer or prospective customer or prospective customer as to which, during the 12 months immediately preceding the date of termination, Employee (i) engaged in any solicitation, sales activity, or other direct contact (in person, in writing, by telephone or electronically) on behalf of the Company; (ii) performed any duties or services on behalf of the Company; and/or (iii) received any Confidential Information."

84.     Upon information and belief, Attariwala breached the Employment Agreement in various ways, including by providing information to the Company's clients and prospective clients about a competitor's competing services, including aseptic filling capabilities, encouraging the Company's clients and prospective clients to do business with a competitor, and misappropriating Confidential Information and Protected Information relating to the Company's clients and prospective clients with the intention of using that information during her employment with a competitor.

85.     As a legal and proximate result of Attariwala's breaches of the Employment Agreement, the Company has suffered damages and the risk of irreparable harm.

86.     The Employment Agreement provides that Attariwala shall account for and pay to the Company all attorneys' fees and costs of litigation should it bring an action against Attariwala for breach of the Employment Agreement and prevail in such action.

---

injunctive relief. The Company does not seek to disturb these orders already entered as they apply to Attariwala and those acting in concert or participation with her.

## COUNT II – VIOLATION OF THE INDIANA UNIFORM TRADE SECRETS ACT
### (Both Defendants)

87.   The Company re-alleges and incorporates by reference the allegations set forth in foregoing paragraphs as if fully set forth herein.

88.   The Company's Confidential Information derives independent economic value from not being known to, and not being readily ascertainable by proper means by, other persons who could obtain economic value from the information's disclosure or use.

89.   The Company has taken reasonable steps to protect the secrecy of its Confidential Information, including but not limited to restricting internal access to such information to those employees who have a "need to know" the information to perform their duties and restricting access to the Company's computer network.

90.   For example, the file entitled "2017.01.09 POR_Meeting Minutes_Singota_Final_Signed," is a lengthy memorandum regarding the Company's aseptic manufacturing capabilities. This information is highly important to the Company and economically valuable to the market. Moreover, the Company does not disclose this information to clients or prospective clients, limits access to this document, and holds it in confidence. In fact, when Attariwala received this information, she was informed in writing by her supervisor that "[t]his information is confidential and can't be shared with anyone outside our company." Yet, Attariwala chose to forward the document to her personal email address.

91.   Another file, entitled "Boston Area BD Contacts" contains a list of all the Company business development contacts in the Boston, Massachusetts area. The Company hired Eric Smart, a business development consultant, to assist the Company with locating and analyzing these contacts. The list includes additional information about prospective clients, such as the type and number of drugs the client contact was manufacturing at the time. The Company

does not disclose this information to clients or prospective clients, limits access to the document, and holds it in confidence. Yet, Attariwala chose to forward the document to her personal email address before leaving the Company.

92.     The file titled ""Singota_Manufacturing_Questionnaire_2018_PT_vF.docx" contained detailed information about the Company's project with a client, including but not limited to the name of the prospective client, a description of the project, its stage of development, and the secret steps and materials used to manufacture the product.

93.     The Company's Confidential Information constitutes trade secrets under the Indiana Uniform Trade Secrets Act, Ind. Code § 24-2-3-1, *et seq.*

94.     Defendants intentionally and willfully misappropriated the Company's trade secrets.

95.     Upon information and belief, Defendants still have possession of the Company's trade secrets.

96.     There is a continuing threat of misappropriation of Confidential Information and Protected Information, including the Company's trade secrets, and unless injunctive relief is granted, the continued use and disclosure of the Company's trade secrets may be inevitable.[2]

97.     Defendants' taking and use of the Company's trade secrets has caused and will continue to cause damage to the Company.

---

[2] On March 4, 2019, a Stipulated Preliminary Injunction Order and an Agreed Order for Inspection of Computers and Electronic Information Storage Devices ("Inspection Order") were entered in this case. On March 18, 2019, a Supplemental Order Following Preliminary Injunction was entered. The Stipulated Preliminary Injunction Order applies to "Attariwala, and anyone acting in concert or participation with her" and sets out, in detail, certain injunctive relief. The Company does not seek to disturb these orders already entered as they apply to Attariwala and those acting in concert or participation with her.

98.    The Company is entitled to damages for the harm caused by Defendants' use and/or disclosure of the Company's trade secrets, including but not limited to profits lost as a result of Defendants' misconduct.

99.    Further, the Company is entitled to injunctive relief to protect against the imminent threat of Defendants' future use and/or disclosure of the Company's trade secrets as such use and/or disclosure will cause the Company substantial and irreparable harm for which there is no adequate remedy at law.[3]

100.    As a result of Defendants' willful misappropriation, the Company is entitled to an award of attorney fees, expenses, and costs.

### COUNT III—VIOLATION OF THE DEFEND TRADE SECRETS ACT
### 18 U.S.C. 1832 *ET SEQ.*
### (Both Defendants)

101.    The Company re-alleges and incorporates by reference the allegations set forth in foregoing paragraphs as if fully set forth herein.

102.    The Company's Confidential Information derives independent economic value because it is not generally known to and not readily ascertainable by proper means by, other persons who could obtain economic value from the information's disclosure or use.

103.    The Company's Confidential Information is not generally available to the Company's competitors.  It derives independent economic value from not being generally known to other persons who could otherwise obtain economic value from its disclosure or use, and it is the subject of efforts that are reasonable under the circumstances to maintain its confidentiality.

---

[3] On March 4, 2019, a Stipulated Preliminary Injunction Order and an Agreed Order for Inspection of Computers and Electronic Information Storage Devices ("Inspection Order") were entered in this case. On March 18, 2019, a Supplemental Order Following Preliminary Injunction was entered. The Stipulated Preliminary Injunction Order applies to "Attariwala, and anyone acting in concert or participation with her" and sets out, in detail, certain injunctive relief. The Company does not seek to disturb these orders already entered as they apply to Attariwala and those acting in concert or participation with her.

104.    The Company has taken reasonable and adequate precautions to protect its confidential information, including, but not limited to, limiting access to the information to a select group of individuals on a need-to-know basis in order to perform their employment and agent duties, and requiring certain individuals to sign confidentiality agreements.

105.    The Company's trade secrets are related to its products and services used in, or intended to be used in, interstate or foreign commerce.

106.    Attariwala had access to the Company's trade secrets, which were provided exclusively for the purpose of furthering the Company's business.

107.    Defendants were and are aware of the confidential and proprietary nature of the Company's confidential information, and of Attariwala's duty not to use such information for her own benefit, or for the benefit of any person or entity other than the Company.

108.    Defendants willfully, wrongfully, and maliciously misappropriated the Company's confidential information.

109.    Defendants have engaged in actual and threatened misappropriation of the Company's trade secrets.

110.    The Company has suffered and will continue to suffer irreparable harm, including, but not limited to, a loss of its competitive advantage, loss of business, loss of goodwill, and other damage unless Defendants and those acting in concert with them are enjoined from continuing to benefit from any unlawful misappropriation of the Company's trade secrets and confidential information.

111.    Unless restrained, Defendants and those acting in concert with them, will continue to misappropriate the Company's trade secrets in violation of the Act.

112.     As a direct and proximate consequence of the conduct of Defendants and those acting in concert with them, the Company has been damaged in an amount to be proven at trial.

113.     The conduct of Defendants, and those acting in concert with them, was and is willful, malicious, and done in conscious disregard of the Company's rights, entitling the Company to exemplary damages and attorney's fees and costs in an amount to be proven at trial.

114.     Pursuant to the Act, the Company is entitled to preliminary and permanent injunctive relief, enjoining and restraining Defendants and those acting in concert with them, from all acts of actual and threatened misappropriation of the trade secrets of the Company; and an award of compensatory damages for actual losses caused by Defendants' misappropriation of trade secrets, attorneys' fees, an award of damages for unjust enrichment caused by Defendants' misappropriation of trade secrets, and an award of exemplary damages under 18 U.S.C. § 1836(b)(3).[4]

## COUNT IV – BREACH OF FIDUCIARY DUTY/DUTY OF LOYALTY
### (Attariwala)

115.     The Company re-alleges and incorporates by reference the allegations set forth in foregoing paragraphs as if fully set forth herein.

116.     Based upon her employment with the Company, Attariwala owed a fiduciary duty and duty of loyalty to the Company.

117.     Attariwala breached her duty by taking and using the Company's proprietary and confidential information for the benefit of Attariwala.

118.     As a result of Attariwala's wrongful conduct, the Company has been damaged.

---

[4] On March 4, 2019, a Stipulated Preliminary Injunction Order and an Agreed Order for Inspection of Computers and Electronic Information Storage Devices ("Inspection Order") were entered in this case. On March 18, 2019, a Supplemental Order Following Preliminary Injunction was entered. The Stipulated Preliminary Injunction Order applies to "Attariwala, and anyone acting in concert or participation with her" and sets out, in detail, certain

119.   As a result of Attariwala's breaches, the Company is entitled to injunctive relief, other equitable relief, and damages.

### COUNT V -- COMPUTER TRESPASS
### (Attariwala)

120.   The Company re-alleges and incorporates by reference the allegations set forth in foregoing paragraphs as if fully set forth herein.

121.   The Company maintains a "computer network" as defined in Indiana Code § 35-43-2-3(a).

122.   Attariwala was not authorized to access the Company's computer network to access, view, copy, transfer, print, forward, or otherwise use files and documents on the Company's computer network for her own personal or commercial use or for purposes contrary to the interests of the Company.

123.   By knowingly and intentionally accessing the Company's computer network to access, view, copy, transfer, print, forward, or otherwise use the Company's files and documents for her commercial or personal use, Attariwala committed computer trespass as set forth in Indiana Code § 35-43-2-3.

124.   Pursuant to Indiana Code § 34-24-3-1, the Company is entitled to recover treble damages, costs and attorney fees.

### COUNT VI – VIOLATIONS OF THE COMPUTER FRAUD AND ABUSE ACT
### 18 U.S.C. § 1030 ET SEQ.
### (All Defendants)

125.   The Company re-alleges and incorporates by reference the allegations set forth in foregoing paragraphs as if fully set forth herein.

---

injunctive relief.  The Company does not seek to disturb these orders already entered as they apply to Attariwala and those acting in concert or participation with her.

126. A person violates 18 U.S.C. § 1030 of the Computer Fraud and Abuse Act ("CFAA") if she knowingly causes the transmission of a command, and as a result of such conduct, intentionally causes damage to a protected computer.

127. A person further violates 18 U.S.C. § 1030 if she intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage.

128. A person further violates 18 U.S.C. § 1030 if he conspires to commit or attempts to commit an offense under subsection (a) of § 1030.

129. Upon information and belief, Attariwala caused the transmission of a command, and as a result of such conduct, intentionally caused damage to Singota's protected computers.

130. Attariwala also intentionally accessed Singota's protected computers without authorization, and as a result of such conduct, caused damages.

131. Singh conspired with Attariwala in violating 18 U.S.C. § 1030(a).

132. As a direct and foreseeable result of Attariwala's and Singh's conduct, Singota has suffered losses and damages in excess of $5,000.

133. Attariwala's and Singh's actions were harmful, willful, wanton, and undertaken with a callous disregard for the best interests of Singota. Punitive damages in this action against Attariwala and Singh are appropriate to deter such conduct in the future and to serve the public good.

## COUNT VII – TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS
### (Both Defendants)

134. The Company re-alleges and incorporates by reference the allegations set forth in foregoing paragraphs as if fully set forth herein.

135. Defendants have intentionally and tortiously interfered with the Company's business relationships, including those with clients and prospective clients.

136.    As a direct, proximate, foreseeable and consequential result of Defendants' impermissible actions, the Company has suffered and continues to suffer irreparable harm and is entitled to injunctive relief.

137.    To the extent calculable, the Company has suffered substantial damages entitling it to an award of damages permitted by applicable law, including but not limited to compensatory damages, punitive damages, pre-judgment and post-judgment interest, and attorney's fees and costs of this suit, and any other just and proper relief.

**COUNT VIII – UNJUST ENRICHMENT**
**(Attariwala)**

138.    The Company re-alleges and incorporates by reference the allegations set forth in foregoing paragraphs as if fully set forth herein.

139.    Attariwala has been conferred a measurable benefit under such circumstances that her retention of the benefit without payment would be unjust.

140.    As a direct, proximate, foreseeable and consequential result of Attariwala's unjust enrichment, the Company has suffered and will continue to suffer irreparable harm and is entitled to injunctive relief and other equitable relief.

141.    To the extent calculable, the Company has suffered substantial damages entitling it to an award of damages permitted by applicable law, including but not limited to compensatory damages, punitive damages, pre-judgment and post-judgment interest, and attorney's fees and costs of this suit, and any other just and proper relief.

**COUNT IX – CONVERSION**
**(Both Defendants)**

142.    The Company re-alleges and incorporates by reference the allegations set forth in foregoing paragraphs as if fully set forth herein.

143.   Defendants have asserted unauthorized control over the Company's property, which constitutes conversion as set forth in Indiana Code § 35-43-4-1.

144.   As a result of this illegal conduct, the Company has been damaged.

145.   Pursuant to Indiana Code § 34-24-3-1, the Company is entitled to recover treble damages, including lost profits resulting from Defendants' misconduct, costs and attorney fees.

## COUNT X – THEFT
### (Both Defendants)

146.   The Company re-alleges and incorporates by reference the allegations set forth in foregoing paragraphs as if fully set forth herein.

147.   Defendants have asserted unauthorized control over the Company's property with the intent to deprive the Company of their value, thereby committing theft as set forth in Indiana Code § 35-43-4-2.

148.   As a result of this illegal conduct, the Company has been damaged.

149.   Pursuant to Indiana Code § 34-24-3-1, the Company is entitled to recover treble damages, including lost profits resulting from Defendants' misconduct, costs and attorney fees.

## COUNT XI – RECEIVING STOLEN PROPERTY
### (Singh)

150.   The Company re-alleges and incorporates by reference the allegations set forth in foregoing paragraphs as if fully set forth herein.

151.   Singh knowingly and intentionally received and retained stolen property belonging to the Company in violation of Indiana Code § 35-43-4-2.

152.   As a result of this illegal conduct, the Company has been damaged.

153.   Pursuant to Indiana Code § 34-24-3-1, the Company is entitled to recover treble damages, including lost profits resulting from Defendants' misconduct, costs and attorney fees.

## COUNT XII – INDIANA CRIME VICTIMS RELIEF ACT
### (Both Defendants)

154.    The Company re-alleges and incorporates by reference the allegations set forth in foregoing paragraphs as if fully set forth herein.

155.    Attariwala's conduct constitutes computer trespass under Ind. Code § 35-43-2-3; Defendants' conduct constitutes criminal conversion under Ind. Code § 35-43-4-1 and theft under Ind. Code § 35-43-4-2; and Singh's conduct constitutes receiving stolen property under Ind. Code § 35-43-4-2.

156.    As a foreseeable, direct, and proximate result of Attariwala's computer trespass, Defendants' conversion and theft, and Singh's receipt of stolen property, the Company has suffered irreparable injury to its rights and pecuniary damages.

157.    As a result of this harm, the Company is entitled to actual and treble damages, as well as attorney's fees, under the Indiana Crime Victims Relief Act, Ind. Code § 34-34-3-1.

## COUNT XIII—CIVIL CONSPIRACY
### (Both Defendants)

158.    The Company re-alleges and incorporates by reference the allegations set forth in foregoing paragraphs as if fully set forth herein.

159.    Each Defendant combined with the other Defendant, by concerted action, to accomplish the unlawful purposes alleged herein and/or to accomplish purposes not in themselves unlawful by the unlawful means alleged herein.

160.    Attariwala and Singh conspired with each other to misappropriate the Company's trade secrets, breach Attariwala's Agreement with the Company, breach Attariwala's fiduciary duty to the Company, commit conversion and theft, unjustly enrich Attariwala, and tortiously interfere with the Company's business expectancies.

161.    Each Defendant, as a participant in the conspiracy, is responsible as a joint tortfeasor for any and all damages caused by the wrongful acts regardless of the degree of active participation.

162.    As a consequence of the foregoing, the Company has suffered and will continue to suffer irreparable harm and loss and damages, including, but not limited to, lost profits.

### COUNT XIV –PRELIMINARY
### AND PERMANENT INJUNCTIVE RELIEF[5]
#### (Both Defendants)

163.    The Company re-alleges and incorporates by reference the allegations set forth in foregoing paragraphs as if fully set forth herein.

164.    In her Employment Agreement Attariwala agreed that her "actual or threatened breach of this Agreement may cause or threaten irreparable injury to the Company that cannot adequately be measured in money damages" and that the "Company shall therefore be entitled to obtain injunctive relief with respect to any such actual or threatened breach by Employee in addition to and not in lieu of any other available remedies." Exhibit A, ¶ 9.The Company has suffered and will continue to suffer immediate and irreparable harm if Defendants are not preliminarily and permanently enjoined.

165.    The Company's business will suffer immediate harm if relief is denied. By contrast, Defendants will not suffer any cognizable legal harm if an injunction is granted because Defendants have no legal right to breach their legal, statutory, and/or fiduciary duties to the Company.

---

[5] On March 4, 2019, a Stipulated Preliminary Injunction Order and an Agreed Order for Inspection of Computers and Electronic Information Storage Devices ("Inspection Order") were entered in this case. On March 18, 2019, a Supplemental Order Following Preliminary Injunction was entered. The Stipulated Preliminary Injunction Order applies to "Attariwala, and anyone acting in concert or participation with her" and sets out, in detail, certain injunctive relief. The Company does not seek to disturb these orders already entered as they apply to Attariwala and those acting in concert or participation with her.

166.    Injunctive relief is appropriate and necessary to protect and maintain the confidentiality and value of the Company's trade secrets and its Confidential Information and Protected Information.

167.    Defendants' threatened, actual or inevitable disclosure and/or use of the Company's trade secrets and Confidential Information and Protected Information for her own purposes or benefit will cause irreparable harm to the Company.

168.    The public interest will not be harmed if an injunction is granted.  Rather, the public interest will be served by preventing Defendants from benefiting by their wrongful conduct.

WHEREFORE, Plaintiff requests judgment in its favor and the following relief against Defendants: [6]

(a)    Entry of a temporary restraining order, preliminary injunction, and permanent injunction enjoining Defendants from having in their possession, custody, or control or from directly or indirectly using the Company's trade secrets, Confidential Information, Protected Information, and other property;

(b)    Entry of a temporary restraining order, preliminary injunction, and permanent injunction prohibiting Attariwala from breaching and continuing to breach her Employment Agreement, including by directly or indirectly communicating with or servicing the Company's clients and prospective clients, including on behalf of Emergent or any other competitor;

---

[6] On March 4, 2019, a Stipulated Preliminary Injunction Order and an Agreed Order for Inspection of Computers and Electronic Information Storage Devices ("Inspection Order") were entered in this case. On March 18, 2019, a Supplemental Order Following Preliminary Injunction was entered. The Stipulated Preliminary Injunction Order applies to "Attariwala, and anyone acting in concert or participation with her" and sets out, in detail, certain injunctive relief. The Company does not seek to disturb these orders already entered as they apply to Attariwala and those acting in concert or participation with her.

(c)     Entry of a temporary restraining order, preliminary injunction, and permanent injunction requiring Defendants to return to the Company all Confidential Information, Protected Information, and other property belonging to the Company, including from all email accounts, computer hardware or software, and other electronic storage media, and for independent verification of their compliance with these requirements;

(d)     Entry of a temporary restraining order, preliminary injunction, and permanent injunction requiring Attariwala to comply with the terms of her Employment Agreement, including extending the period of her non-solicitation obligations under paragraph 6 of that agreement;

(e)     Compensatory damages, statutory damages, exemplary damages, treble damages, punitive damages, costs, expenses, attorneys' fees, and applicable interest; and

(f)     All other just and proper relief.

## JURY DEMAND

Plaintiff demands a trial by jury on all counts of its complaint triable by jury.

## **VERIFICATION**

I affirm, under the penalties for perjury, that the foregoing factual representations are true to the best of my knowledge, information and belief based on my personal knowledge or based on information provided to BioConvergence, LLC by its employees and/or consultants.

On Behalf of BioConvergence, LLC


*Lisa K. Kilgas*
_____
Chief Executive Officer

Respectfully submitted,

Ogletree, Deakins, Nash, Smoak & Stewart, P.C.


/s/Christopher C. Murray
Christopher C. Murray, IN 26221-49
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
111 Monument Circle, Suite 4600
Indianapolis, IN  46204
Telephone:  317.916.1300
Facsimile:  317.916.9076
christopher.murray@ogletreedeakins.com


*Attorney for Plaintiff BioConvergence LLC*

38639329.1

## CERTIFICATE OF SERVICE

I hereby certify that on June 18, 2019, a copy of the foregoing was filed electronically. Notice of this filing will be sent to Jaspreet Attariwala by operation of the Court's CM/ECF system to the following:

Paul L. Jefferson
*Paul.L.Jefferson@msth.com*

Erik C. Johnson
*Erik.C.Johnson@msth.com*

Jody M. Butts
*Jody.M.Butts@msth.com*

Cynthia A. Bedrick
*Cynthia.A.Bedrick@msth.com*

                                   *s/ Christopher C. Murray*

# Exhibit A

Form-At Will

## EMPLOYMENT AGREEMENT

THIS EMPLOYMENT AGREEMENT ("Agreement"), dated and effective September 28, 2015, is entered into by and between BioConvergence LLC, an Indiana limited liability company (the "Company"), and Jaspreet Saini, a resident of the State of Indiana ("Employee").

### RECITALS

A.     The Company desires to employ Employee per the job responsibilities detailed in the Employee's Job Offer letter, on the terms and subject to the conditions set forth in this Agreement.

B.     Employee desires to accept such employment.

### AGREEMENT

NOW, THEREFORE, in consideration of the promises and mutual covenants contained herein, the parties agree as follows:

1.     Title and Duties.  The Company agrees to employ Employee per the job title detailed in the Employee's Job Offer letter and Employee agrees to accept such employment to serve the Company in that capacity and to perform the duties and responsibilities inherent in such position and any other duties as may be assigned to Employee from time to time by their manager. Employee shall perform the duties of this position in a diligent and competent manner and on a full-time basis.  Throughout Employee's employment with the Company, Employee shall (a) faithfully, competently and loyally serve the Company, (b) promote and serve the interests of the Company, (c) not render services or devote efforts, directly or indirectly, to any other person or organization without the prior written consent of the CEO, and (d) not engage in any activity that would interfere significantly with the faithful and loyal performance of Employee's duties under this Agreement.

2.     Term.  The term of the employment relationship created by this Agreement ("Term") shall commence on the Effective Date and shall continue thereafter until terminated, with or without cause, by either party upon notice to the other party.

3.     Compensation and Other Benefits.

(a)     Salary.  During the Term, Employee will be paid per the terms detailed in the Employee's Job Offer letter less any withholdings and deductions required by law or requested by Employee ("Salary").  The Salary shall be payable in accordance with the Company's customary practice and will be pro-rated for any years of partial employment.  The Company may increase or decrease the Salary from time to time in its discretion.

(b)     Incentives.  During the Term, Employee shall be entitled to a bonus and incentive compensation (collectively "Bonus") in such amounts, if any, to be determined by the Company owners from time to time.  No Bonus (including any portion thereof) shall be deemed earned by Employee unless Employee remains employed with the Company through the period for which the Bonus applies.  Employee shall not be entitled to payment of any Bonus that has not been earned by Employee by the date of termination of his employment, regardless of the reason for termination.

(c)     Vacation.  If eligible, Employee shall receive paid vacation per the details in the Employee's Job Offer letter.  Vacation will be pro-rated for any years of partial employment.

4.      Confidential Information.

        (a)      Definition.  For purposes of this Agreement, "Confidential Information" shall mean any proprietary, confidential or competitively-sensitive information and materials which are the property of or relate to the Company or the business of the Company.  Confidential Information shall include without limitation all information and materials created by, provided to or otherwise disclosed to Employee in connection with Employee's employment with the Company (excepting only information and materials already known by the general public), including without limitation (i) trade secrets, (ii) the names and addresses of the Company's past, present or prospective contributors, beneficiaries or business contacts, and all information relating to such contributors, beneficiaries or business contacts, regardless of whether such information was supplied or produced by the Company or such contributors, beneficiaries or business contacts; and (iii) information concerning the Company's affiliates, financing sources, profits, revenues, financial condition, fund raising activity, and investment activity, business strategies, or software used by the Company and associated layouts, templates, processes, documentation, databases, designs and techniques.

        (b)      Non-Disclosure.  Employee acknowledges and agrees that Confidential Information is the property of the Company, and that Employee shall not acquire any ownership rights in Confidential Information.  Employee (i) shall use Confidential Information solely in connection with Employee's employment with the Company; (ii) shall not directly or indirectly disclose, use or exploit any Confidential Information for Employee's own benefit or for the benefit of any person or entity, other than the Company, both during and after Employee's employment with the Company or as required by law; and (iii) shall hold Confidential Information in trust and confidence, and use all reasonable means to assure that it is not directly or indirectly disclosed to or copied by unauthorized persons or used in an unauthorized manner, both during and after Employee's employment with the Company.

        5.      Inventions and Improvements.  Any invention or development of any kind related to the Company's business, made or conceived by Employee (solely, jointly or in conjunction with anyone else) while Employee is employed by the Company, shall be promptly disclosed by Employee to the Company and shall be the sole property of the Company.  Employee will execute an assignment to the Company (or to another person designated by it) of Employee's entire claim to any interest in each such invention or development. Employee will sign all lawful papers and, at the Company's expense, assist in every lawful way to obtain and sustain patents, trademarks or copyrights for the Company's benefit in any such inventions or developments when requested to do so.   Employee will not be entitled to compensation beyond Employee's salary for the performance of any such acts.

        6.      Non-Solicitation.  During Employee's employment with the Company and for a period of twelve (12) months (which shall be extended by the length of any period during which Employee is in violation of this section) immediately following the termination of Employee's employment for any reason, Employee (on Employee's own behalf or that of any other person or entity) shall not directly or indirectly sell or otherwise provide or solicit the sale or provision of any product or service that competes directly or indirectly with any business of the Company to any customer or prospective customer as to which, during the 12 months immediately preceding the date of termination, Employee (i) engaged in any solicitation, sales activity, or other direct contact (in person, in writing, by telephone or electronically) on behalf of the Company; (ii) performed any duties or services on behalf of the Company; and/or (iii) received any Confidential Information.

        7.      Non-Raiding.  For a period of twelve (12) months (which period shall be extended to include any period of time during which Employee is in violation of this section) immediately following the termination of Employee's employment for any reason, Employee (on Employee's own behalf or that of any other person or entity) shall not directly or indirectly solicit, induce or influence any person who is an employee of the Company as of, or within 3 months prior to,

Jaspreet Saini                                          6

Employee's termination to discontinue, reduce, or otherwise change in any manner adverse to the interests of the Company the nature or extent of such employment relationship with the Company.

8.    Return of Property.   Upon termination for any reason of Employee's employment with the Company, Employee shall delete all Confidential Information from any computer that does not belong to the Company and shall turn over to the Company (a) all documents and other materials (including without limitation all copies or reproductions of such documents or materials, tapes, floppy disks, backup copies, and other forms of electronic storage media) which constitute, contain or are derived from Confidential Information; (b) all other documents, notes, work product and other materials (including without limitation copies or reproductions of such documents, notes, work product or materials) connected with or arising out of Employee's employment with the Company; (c) any computer and computer software, pager, cell phone, personal digital assistant or other technological or communication device provided by the Company; and (d) any security devices and information such as keys, access cards, usernames and passwords related to the Company.

9.    Breach of Agreement and Remedies.   Employee acknowledges and agrees that Employee's actual or threatened breach of this Agreement may cause or threaten irreparable injury to the Company that cannot adequately be measured in money damages.  The Company shall therefore be entitled to obtain injunctive relief with respect to any such actual or threatened breach by Employee in addition to and not in lieu of any other available remedies.  Employee shall also pay any and all costs, damages and other expenses, including without limitation all attorneys' fees, witness fees and other legal expenses which are incurred by the Company in successfully enforcing this Agreement.  Employee further acknowledges and agrees that the existence of any claim or cause of action by Employee against the Company, whether or not predicated upon Employee's employment relationship with the Company, shall not relieve Employee of Employee's obligations under this Agreement.

10.    Other Terms.   This Agreement is in addition to and not in lieu of any other written terms of Employee's employment with the Company, except that this Agreement sets forth the entire agreement between Employee and the Company with respect to the subject matter of this Agreement and fully supersedes all prior negotiations, representations and agreements, whether written or oral, between Employee and the Company with respect to the subject matter of this Agreement.

11.    Other Agreements.   Employee represents and warrants to the Company that Employee's employment with the Company does not breach, violate, interfere with or otherwise conflict with any oral or written agreement between Employee and any other person or entity, including without limitation non-competition and/or non-disclosure provisions in any such agreement.  Employee shall indemnify, defend and hold harmless the Company and all of its officers, directors, shareholders, employees and agents against any and all claims, damages, losses and expenses (including without limitation attorneys' fees) incurred by the Company in connection with Employee's breach of this representation and warranty.

12.    Severability.   The provisions of this Agreement are severable and shall be separately construed.  If any of them is determined to be unenforceable by any court, that determination shall not invalidate any other provision of this Agreement.

13.    Amendment; Waiver; Successors. This Agreement may not be modified, amended or waived in any manner except by a written document executed by the Company and Employee.  The waiver by either party of compliance with any provision of this Agreement by the other party shall not operate or be construed as a waiver of any other provision of this Agreement (whether or not similar), or a continuing waiver or a waiver of any subsequent breach by such party of a provision of this Agreement. This Agreement and the covenants herein shall extend to and inure to the benefit of the successors and assigns of the Company.

Jaspreet Saini                                                       7

14.    Governing Law and Forum.  Employee acknowledges and agrees that the State of Indiana has a substantial connection with this Agreement.   This Agreement shall therefore be governed by and construed according to the internal laws of the State of Indiana, without regard to conflict of law principles.  The parties further agree that any disputes arising under this Agreement and/or any action brought to enforce this Agreement may be brought in a state court of competent jurisdiction in Monroe County, Indiana, or in the federal court for the Southern District of Indiana, and the parties consent to personal jurisdiction of such courts and waive any defense of forum non-conveniens.

15.    Contingency.   This Agreement is contingent upon Employees satisfactory proof of identity, legal authorization to work in the United States, completion of drug screen, education and criminal history background check.

16.    Compliance.   Employee agrees to comply with policies stated in the current employee handbook as changed from time to time.


IN WITNESS WHEREOF, the parties have hereunto executed this Agreement on the date and year first above written.


BioConvergence LLC

By: _____
Melanie Lewis, HR Manager

Employee

By: _____
Jaspreet Saini

Jaspreet Saini                                          8

# Exhibit B

**Bio**Convergence ᴸᴸᶜ
4320 West Zenith Drive
Bloomington, IN  47404
(812) 961-1700

September 28, 2015

Jaspreet Saini
8907 N Mango Ave
Morton Grove, IL 60053

Re:    Offer of Employment

Dear Jaspreet:

On behalf of BioConvergence LLC (the "Company"), I am pleased to make you this offer of employment. This letter will confirm the terms of our offer to you.

1.     **Position and Start Date.**   Your full-time position will be Senior Business Development Manager reporting to Will Powers, Senior Director of Business Development and Marketing. Your duties will include those listed in the attached Job Description and may be adjusted from time to time.  Your employment with the Company will begin on a mutually agreed upon date, but no later than November 2, 2015.  Every employee is required to go through a sixty (60) day probationary period.

2.     **Compensation.**  You will be paid a base salary of $80,000 per year, pro-rated for the first year, payable in accordance with the Company's customary payroll practices.  Your salary may be adjusted from time to time by the Company.  You are an exempt employee.

3.     **Employee Benefit Plans.**   During your employment with the Company, you will be entitled to participate in the employee benefit plans and programs for which you meet the eligibility requirements.   Such benefits become effective at the first of the month following successful completion of the 60-day probationary period.  Your benefit effective date will be based upon Start Date.  You will receive 15 vacation days per calendar year pro-rated for 2015.

4.     **Company Policies.**  Our offer to hire you is contingent upon your submission of satisfactory proof of your identity, legal authorization to work in the United States, completion of a pre-employment drug screen, education and criminal history background check and execution of the Company's Employment Agreement. During your employment with the Company, you will be subject to those policies and procedures established by the Company from time to time.  You will be an employee-at-will of the Company, and your employment may be terminated at any time, with or without cause or notice, by you or the Company.

5.     **Other Agreements.**   You represent and confirm to the Company that your employment with the Company as contemplated by this Offer Letter and Employment Agreement will not violate or otherwise interfere or conflict with any contractual obligations that you may have with any other person or entity, including any non-competition or non-disclosure obligations that you may have with any other employer.  In addition, the Company strictly forbids you from using any confidential or proprietary information belonging to any other person or entity in connection with your employment with the Company.

Jaspreet Saini                                                    1

If you find these terms acceptable, please sign and date this letter in the space provided below and return this letter to us.  We look forward to you joining our team and being a major contributor to our ongoing success.

BioConvergence LLC

By: _____

Melanie Lewis, HR Manager

ACCEPTED AND AGREED TO:

_____
Jaspreet Saini

Date: 09|29|15

This offer of employment will expire at 12:01 a.m. on October 2, 2015.

Jaspreet Saini                              2

# Exhibit C

| Job Description Form Job Description #: JD121 | |
| --- | --- |
| Employee Name: Jaspreet Saini | Department: Business Development |
| Job Title: Senior Business Development Manager | Reports to: Senior Director of Business Development and Marketing |
| Position Type: **Full-time, exempt** | Hours:  40hr/wk, 1st shift |

**General Description:**

1. Purpose- Identify and develop business leads and opportunities that will result in revenue for BioConvergence
2. Business Development
   a. Develop and maintain current and thorough understanding of company capabilities, service offerings, current projects, and strategic goals
   b. Identify high efficiency methods and specific tools for establishing high quality leads for potential business opportunities for BioConvergence
   c. Implement these methods and tools
   d. Identify potential business leads, establish working relationships, identify client needs and gaps
   e. Utilize consistent company sales and marketing messaging and Business Development processes to align with company's main service offerings
   f. Utilize company and perform company processes (e.g.: New Opportunity Forms, CDA, Project Plan, MSA and Quality Agreement) in securing a client purchase orders
   g. Continuously track efficiency and results of lead identification methods and tools, and routinely report on performance.
   h. Continually evaluate effectiveness of lead development tools, and identify improved methods and document these activities
   i. Implement new and improved means for lead development
   j. Provide thorough and regular communication with all stakeholders
   k. Provide regular communications and written reporting on performance to Supervisor
   l. Collaborate with Senior Management in expansion of service offerings, new messaging techniques, offering customer inputs and/or other market intelligence data
   m. Develop and execute personal goals contributing to creation and execution of departmental goals that align with corporate strategy
   n. Utilize Business Development tools, such as CRM, as part of daily functions
   o. Partner with project management to ensure smooth transition for clients and their projects
   p. Collaborate with marketing organization to assist in developing plans, tools, messaging strategy and content.
   q. Utilize ongoing business analysis and market research to identify new targets, initiatives or markets, understand competitive and regulatory landscape, and alter sales strategy accordingly.
3. General
   a. Demonstrate high ethical and professional standards with all business contacts in alignment with BioConvergence's corporate culture
   b. Spend sufficient personal time on BioConvergence premises interacting with various personnel to develop and maintain effective working relationships, gain understanding of company operational status, and exchange important information with staff
   c. Embrace and exhibit a positive and team approach to work
   d. Comply with quality and safety management systems including requirements for documentation, training, system use, SOPs, processes and procedures
   e. General support required of a company where employees can be asked to perform multiple tasks both inside and outside their department to meet the needs of the business

Characteristics required include:

1. Proven record in selling and building customer relationships and networks
2. Excellent communication and negotiation skills – oral, written
3. Trustworthiness and personal integrity – able to maintain a high degree of confidentiality
4. Self-starter willing to take initiative

Jaspreet Saini                                3

5. Positive attitude and good judgment; respected by peers and clients
6. Excellent time management and organizational skills
7. Ability to travel to client sites, conferences, and trade shows a minimum of 2-3 week per month.
8. Ability to spend at least two days per month on site at BioConvergence

Education and Work Experience Requirements:
1. 7-10 years sales and/or business development experience highly preferred. Experience in the pharmaceutical and/or life sciences industry required.
2. Experience and training in MS Office products & CRM systems
3. Experience working in a startup that grew rapidly a plus, or other entrepreneurial experience
4. BS in applicable technical field preferred, or business management.
5. MBA or Master's Degree preferred but not required

**Employee:** Jaspreet Saini          Signature:                          **Date:** 09/29/15

**BioConvergence:** Melanie Lewis, HR Manager   Signature:                 **Date:** 29Sep2015

# Exhibit D

| | | |
|---|---|---|
| STATE OF INDIANA | ) | IN THE MONROE CIRCUIT COURT |
| | ) SS: | |
| COUNTY OF MONROE | ) | CAUSE NO. _____ |

| | |
|---|---|
| BIOCONVERGENCE LLC d/b/a | ) |
| SINGOTA SOLUTIONS | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| JASPREET ATTARIWALA | ) |
| | ) |
| Defendant. | ) |
| | ) |

## DECLARATION OF MELANIE LEWIS

I, Melanie Lewis, being of lawful age, upon my oath and personal knowledge, state as follows:

1.    All matters contained in this Declaration are within my personal knowledge.

2.    I am an adult, over the age of 18, and am a resident of Monroe County, Indiana.

3.    I am the Human Resources Manager at Plaintiff BioConvergence LLC d/b/a Singota Solutions (the "Company" or "Plaintiff"). In my role as Human Resources Manager, I am responsible for all personnel-related investigations.

4.    On December 18, 2018, Defendant Jaspreet Attariwala ("Defendant" or "Attariwala") notified me that she was resigning from the Company effective December 28, 2018.

5.    In January 2019, after Attariwala resigned her employment, I asked the Company's information technology ("IT") department to give me access to Attariwala's Microsoft Outlook account because she had not been keeping the Company's Customer

Relationship Management ("CRM") software up to date with her business development activities at the end of 2018.

6.      While reviewing the emails Attariwala had sent using the Company's email system, I noticed she had emailed multiple clients and prospective clients shortly before she left her employment with the Company to tell them she was going to work for Emergent BioSolutions, one of the Company's competitors. Attariwala informed these clients and prospective clients that she would reach out to them in January 2019 after she started in her new position. For example, one email from Attariwala, on which no Company personnel were copied, stated "I am actually moving on from Singota to another company starting January…If okay with you, I'd love to connect once I've settled in." In other emails, Attariwala informed Company clients that she was resigning and stated that "[i]t was a pleasure to have met and worked with you. I will still be in the CMO space and would be happy to reach out to you once I begin my new role in mid-Jan. Have a wonderful rest of the year and look forward to connecting in Jan." Attariwala notified another of the Company's clients that "I'll still be in the industry and would be happy to connect in mid-Jan after I start my new role." Attariwala also provided her personal phone number. Redacted copies of some of Attariwala's communications with the Company's clients and prospective clients are attached hereto as Exhibit 1.

7.      Attariwala also used the Company's email system and its confidential client contact information to share information about Emergent's competing services with the Company's clients. In one such email, Attariwala informed a Company client that she would be in a "[s]imilar role, CMO Business Development" and she shared a link to a portion of Emergent's website titled "Manufacturing Expertise." A redacted copy of this communication is attached hereto as Exhibit 2.

8.     In January and early February, the Company put Attariwala and Emergent, through their respective counsel, on notice regarding Attariwala's obligations to the Company and her improper conduct in contacting the Company's current and prospective clients on behalf of her new employer.  In particular, on January 18, 2019, the Company, by counsel, sent a letter to Attariwala through her attorney demanding that Attariwala comply with her Employment Agreement and other obligations to the Company, identify all confidential Company information that she retained in her possession, and describe any uses she had made of confidential Company information, among other demands. *See* Ltr. from C. Murray to J. Butts dated Jan. 18, 2019 at 3-4, a true and correct copy of which is attached hereto as Exhibit 3.

9.     Following the Company's January 18, 2019, letter, the parties conducted discussions for several weeks, during which Attariwala failed to acknowledge her misconduct. Moreover, Attariwala failed to comply with the Company's demand that she disclose what Confidential Information of the Company she retained following her resignation.

10.     During this time, the Company retained a computer forensic expert to attempt to determine if Attariwala had improperly accessed, copied, downloaded, printed, or otherwise used or retained confidential Company information.

11.     Pursuant to the instructions of this computer forensic expert, I obtained from the Company's information technology department a copy of an Outlook Personal Storage Table ("ced.PST file") containing Attariwala's Company emails, contacts, and calendar.

12.     Following the instructions of the forensic computer expert, I then conducted several searches of Attariwala's Company .PST file using her personal email address, jsaini1@gmail.com. As a result of these searches, I discovered that roughly one week before Attariwala notified the Company that she was resigning, Attariwala forwarded confidential

information about the Company's clients, prospective clients, processes, and business practices from her Company email account to her personal email account.

13.     For example, on December 11, 2018, approximately one week before Attariwala resigned, she forwarded a file entitled "2017.01.09 POR_Meeting Minutes_Singota_Final_Signed" to her personal email account. A true and correct copy of the email Attariwala forwarded is attached hereto as Exhibit 4. (Because the attachment to this email is highly confidential, I have not included it with the exhibit.) This file consists of a lengthy memorandum prepared by the Company and provided to the United States Food and Drug Administration ("FDA") regarding the Company's aseptic manufacturing capabilities. The original email to Attariwala expressly instructed her that the information in the memorandum was confidential and not to be shared outside the company.

14.     Also on December 11, 2018, Attariwala forwarded a file from the Company email system to her personal email address entitled "Boston Area BD Contacts." A true and correct copy of the email that Attariwala forwarded to herself is attached hereto as Exhibit 5. (Because the attachment is highly confidential, I have omitted it from the exhibit.) Attariwala received this file from Eric Smart, a business development consultant hired to assist the Company with locating and analyzing business contacts. The file from Mr. Smart contains a list of over one hundred Company contacts in the Boston, Massachusetts area, as well as additional information such as the type and number of drugs the client contact was manufacturing at the time. The Company does not disclose this information to customers, limits access to the document, and holds it in confidence.

15.     Significantly, Attariwala represented to Singota when she resigned that she would be working in the Boston, Massachusetts area at Emergent.

4

16.    In addition, on December 11, 2018, Attariwala forwarded a second contact list to her personal email account. The email Attariwala sent to herself containing this information is attached hereto as Exhibit 6. (I have omitted the highly confidential attachment from the exhibit.) This list included the contact information for some of the Company's biggest clients in terms of revenue and included companies doing business in the region in which Attariwala indicated she was to be assigned at Emergent.

17.    While employed by the Company, Attariwala, among other things, promoted the Company's aseptic filling capabilities. Aseptic filling is the process of ensuring that commercially sterilized products are packaged into sterile containers under sterile conditions. In this process, Singota utilizes the Vanrx SA-25 work-cell system.

18.    Based on publicly available information, Emergent recently purchased a similar Vanrx SA25 machine. A true and correct copy of Emergent's publicly available Quick Facts is attached hereto as Exhibit 7.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND

CORRECT.

EXECUTED ON THIS ___27___ DAY OF _____February_____ , 2019.

_____
Melanie Lewis

37515612.1

# Exhibit 1



**From:** Jessie Attariwala
**Sent:** Tuesday, December 18, 2018 9:49 AM

1

**To:** █████████████████████████

**Subject:** RE: Free to chat?

Hi ███.

I wanted to let you know that I have resigned my position at Singota Solutions. I will be available through Friday, December 28, but after that date, Will Powers will be your main point of contact.

It was a pleasure to have met and worked with you. I will still be in the CMO space and would be happy to reach out to you once I begin my new role in mid-Jan.

Have a wonderful rest of the year and look forward to connecting in Jan.

Kind regards,
Jessie

**Jessie Attariwala**
*Senior Business Development Manager*
*jessie.attariwala@singota.com*
T: 847.942.7049





4320 West Zenith Dr. Bloomington, IN 47404

CONFIDENTIAL: This transmission(including any attachments) may contain Confidential Information of BioConvergence LLC dba Singota Solutions and is intended solely for the recipient(s) named above. If you are not a named recipient, any interception, copying, distribution, disclosure or use of this transmission or any information contained in it is strictly prohibited, and may be subject to criminal and civil penalties. If you have received this transmission in error, please immediately call us at (812) 961-1700, delete the transmission from all forms of electronic or other storage, and destroy all hard copies.
Do NOT forward this transmission. Thank you.

**From:** █████████████████████████

**Sent:** Tuesday, December 18, 2018 9:46 AM

**To:** Jessie Attariwala <jessie.attariwala@singota.com>

**Subject:** Automatic reply: Free to chat?

[ATTENTION: This email came from an external source! DO NOT click on links or open attachments from unknown senders or unexpected emails. If the email looks suspicious, contact IT.]
Thanks for your email. I am currently out of the office on vacation, I will return to office on 2nd January 2019. I will be checking my email sporadically. I will answer your email as soon as possible.







**From:** Jessie Attariwala
**Sent:** Thursday, December 20, 2018 9:38 AM

1

**To:** ████████████████████
**Subject:** RE: Free to chat?

Personal, 847-942-7049

**Jessie Attariwala**
*Senior Business Development Manager*
*jessie.attariwala@singota.com*
T: 847.942.7049



**Singota will be closed on December 24th, 25th and 31st and
January 1st.**



*4320 West Zenith Dr. Bloomington, IN 47404*

CONFIDENTIAL: This transmission (including any attachments) may contain Confidential Information of BioConvergence LLC dba Singota
Solutions and is intended solely for the recipient(s) named above. If you are not a named recipient, any interception, copying, distribution,
disclosure or use of this transmission or any information contained in it is strictly prohibited, and may be subject to criminal and civil
penalties. If you have received this transmission in error, please immediately call us at (812) 961-1700, delete the transmission from all
forms of electronic or other storage, and destroy all hard copies.
Do NOT forward this transmission. Thank you.

**From:** ████████████████████
**Sent:** Wednesday, December 19, 2018 10:42 PM
**To:** Jessie Attariwala <jessie.attariwala@singota.com>
**Subject:** Re: Free to chat?

[ATTENTION: This email came from an external source! DO NOT click on links or open attachments from unknown
senders or unexpected emails. If the email looks suspicious, contact IT.]

Hi Jessie,
Sounds good, let's talk when I get back.  Do I have your personal cell or work?

Best,
██

Sent from my iPhone

On Dec 18, 2018, at 3:03 PM, Jessie Attariwala <jessie.attariwala@singota.com> wrote:

> Hi ██,
>
> No worries! Enjoy. I wanted to let you know that I was transitioning from Singota. I'll connect with you in
> late Jan or feel free to call me next week as I'll be around.
>
> Happy Holidays!
> Jessie

**Jessie Attariwala**
*Senior Business Development Manager*
*jessie.attariwala@singota.com*
T: 847.942.7049





*4320 West Zenith Dr. Bloomington, IN 47404*

*CONFIDENTIAL: This transmission(including any attachments) may contain Confidential Information of BioConvergence LLC dba Singota Solutions and is intended solely for the recipient(s) named above. If you are not a named recipient, any interception, copying, distribution, disclosure or use of this transmission or any information contained in it is strictly prohibited, and may be subject to criminal and civil penalties. If you have received this transmission in error, please immediately call us at (812) 961-1700, delete the transmission from all forms of electronic or other storage, and destroy all hard copies.*
*Do NOT forward this transmission. Thank you.*

**From:** ███████████████████
**Sent:** Tuesday, December 18, 2018 12:14 PM
**To:** Jessie Attariwala <jessie.attariwala@singota.com>
**Subject:** Re: Free to chat?

[ATTENTION: This email came from an external source! DO NOT click on links or open attachments from unknown senders or unexpected emails. If the email looks suspicious, contact IT.]

Hi Jessie,

Can we catch up after Christmas? I'm in Mexico with my family through the 27th

Sent from my iPhone

On Dec 18, 2018, at 9:44 AM, Jessie Attariwala <jessie.attariwala@singota.com> wrote:

Hi ██, 

Happy Holidays! Hope you're well. Would you have a few minutes to chat this week?

**Jessie Attariwala**
*Senior Business Development Manager*
*jessie.attariwala@singota.com*
T: 847.942.7049





*4320 West Zenith Dr. Bloomington, IN 47404*

*CONFIDENTIAL: This transmission (including any attachments) may contain Confidential Information of BioConvergence LLC dba Singota Solutions and is intended solely for the recipient(s) named above. If you are not a named recipient, any interception, copying, distribution, disclosure or use of this transmission or any information contained in it is strictly prohibited, and may be subject to criminal and civil penalties. If you have received this transmission in error, please immediately call us at (812) 961-1700, delete the transmission from all forms of electronic or other storage, and destroy all hard copies.
Do NOT forward this transmission. Thank you.*



**From:** Jessie Attariwala
**Sent:** Friday, December 21, 2018 12:51 PM

1

**To:** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮>
**Cc:** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮
**Subject:** RE: Revised Singota Project Proposal

Thanks so much to both of you. Happy to reach out when I settle into my new role in mid-Jan.

All the best with the project!
Jessie

**Jessie Attariwala**
*Senior Business Development Manager*
*jessie.attariwala@singota.com*
T: 847.942.7049

**singota®** solutions

**Singota will be closed on December 24th, 25th and 31st and January 1st.**

*4320 West Zenith Dr. Bloomington, IN 47404*

*CONFIDENTIAL: This transmission(including any attachments) may contain Confidential Information of BioConvergence LLC dba Singota Solutions and is intended solely for the recipient(s) named above. If you are not a named recipient, any interception, copying, distribution, disclosure or use of this transmission or any information contained in it is strictly prohibited, and may be subject to criminal and civil penalties. If you have received this transmission in error, please immediately call us at (812) 961-1700, delete the transmission from all forms of electronic or other storage, and destroy all hard copies.*
*Do NOT forward this transmission. Thank you.*

**From:** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮>
**Sent:** Friday, December 21, 2018 11:32 AM
**To:** Jessie Attariwala <jessie.attariwala@singota.com>
**Cc:** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮>
**Subject:** RE: Revised Singota Project Proposal

[ATTENTION: This email came from an external source! DO NOT click on links or open attachments from unknown senders or unexpected emails. If the email looks suspicious, contact IT.]
Thanks Jessie and good luck with your new company
▮▮▮

**From:** Jessie Attariwala <jessie.attariwala@singota.com>
**Sent:** Friday, December 21, 2018 10:18 AM
**To:** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮>
**Cc:** ▮▮▮▮▮▮▮▮▮▮▮▮; ▮▮▮▮▮▮▮▮▮▮▮▮; William Powers <will.powers@singota.com>; Erika Morris <erika.morris@singota.com>; Michelle Hoover <michelle.hoover@singota.com>
**Subject:** RE: Revised Singota Project Proposal

Hello ▮▮▮▮▮▮,

Hope you are well and enjoying the holiday season.

I'm writing to let you know that I have resigned my position at Singota Solutions.

I would like to introduce you to Michelle Hoover. She will be your dedicated Project Manager. She will connect with you in early Jan to set up a kick off call for this project.

Also, if you need continued Business Development support, Will Powers and Erika Morris will be available. Erika is an experienced account manager, and I'm confident that you'll receive the very best service and support. You can reach her at Erika.morris@singota.com or by phone at 812.961.1758.

It has been an absolute pleasure to work with you. I sincerely hope our paths cross again and wish you well in your future endeavors.

Kind regards,
Jessie

**Jessie Attariwala**
*Senior Business Development Manager*
*jessie.attariwala@singota.com*
T: 847.942.7049



**Singota will be closed on December 24th, 25th and 31st and January 1st.**



*4320 West Zenith Dr. Bloomington, IN 47404*

CONFIDENTIAL: This transmission (including any attachments) may contain Confidential Information of BioConvergence LLC dba Singota Solutions and is intended solely for the recipient(s) named above. If you are not a named recipient, any interception, copying, distribution, disclosure or use of this transmission or any information contained in it is strictly prohibited, and may be subject to criminal and civil penalties. If you have received this transmission in error, please immediately call us at (812) 961-1700, delete the transmission from all forms of electronic or other storage, and destroy all hard copies.
Do NOT forward this transmission. Thank you.

**From:** ███████████████████ >
**Sent:** Monday, December 10, 2018 9:55 AM
**To:** Jessie Attariwala <jessie.attariwala@singota.com>
**Cc:** ████████████████████████████████ >
**Subject:** RE: Revised Singota Project Proposal

[ATTENTION: This email came from an external source! DO NOT click on links or open attachments from unknown senders or unexpected emails. If the email looks suspicious, contact IT.]
Jessie,  attached please find the fully executed agreement and a copy of the PO for your records.  When invoicing, please include the PO number and send it to ████████████ with cc to me and ███. Look forward to reconnecting in January for the kickoff meeting.

Best, ████

**From:** Jessie Attariwala <jessie.attariwala@singota.com>
**Sent:** Friday, November 30, 2018 11:23 AM

3

To: ██████████████████████

**Subject:** Revised Singota Project Proposal

██,

Nice to chat with you yesterday. Per our conversation, please see the revised PP with the minor edits.
Please note the following:

- Under assumptions, we changed the wording from "approximately" to "minimally" in order to reflect 16L (2,666 vials) up to 17L.
- Under Release testing, indicated the ████ method by added the ████████ method
- Revised the dates to reflect March 2019.
- We have the necessary vial stock on hand for this fill up to 34L should that be needed.
- With regards to payment, please reference section G.4 where it notes 30 days from the invoice date.
- The only 3rd party costs that would be incurred would be just freight, temptales and shippers. Please note footnote 4.
- We are confirmed for the last 2 weeks of March 2019 as the estimated timeframe for manufacturing.

This covers all the outstanding edits and adjustments. Look forward to receiving the signed Project Proposal. On behalf of the Singota team, we look forward to working with ██████ on this project in 2019.

Have a wonderful weekend,
Jessie

**Jessie Attariwala**
*Senior Business Development Manager*
*jessie.attariwala@singota.com*
T: 847.942.7049

*4320 West Zenith Dr. Bloomington, IN 47404*

*CONFIDENTIAL: This transmission(including any attachments) may contain Confidential Information of BioConvergence LLC dba Singota Solutions and is intended solely for the recipient(s) named above. If you are not a named recipient, any interception, copying, distribution, disclosure or use of this transmission or any information contained in it is strictly prohibited, and may be subject to criminal and civil penalties. If you have received this transmission in error, please immediately call us at (812) 961-1700, delete the transmission from all forms of electronic or other storage, and destroy all hard copies.*
*Do NOT forward this transmission. Thank you.*

This message (including any attachments) may contain confidential, proprietary, privileged and/or private information. If you are not the intended recipient of this message, please notify the sender immediately, and delete the message and any attachments. Any disclosure, reproduction, distribution or other use of this message or any attachments by an individual or entity other than the intended recipient is prohibited. Thank you.
This message (including any attachments) may contain confidential, proprietary, privileged and/or private information. If you are not the intended recipient of this message, please notify the sender immediately, and delete the message and any attachments. Any disclosure, reproduction, distribution or other use of this message or any attachments by an individual or entity other than the intended recipient is prohibited. Thank you.



**From:** Jessie Attariwala
**Sent:** Tuesday, December 18, 2018 11:29 AM

1

To: ████████████████████ >

**Subject:** RE: Singota follow up

HI ███,

No problem. Yes, please send me the questionnaire and I can help get the process started.

I also wanted to let you know that I have resigned my position at Singota Solutions. I will be available through Friday, December 28, but after that date, Will Powers will be your main point of contact.

It was a pleasure to have met and worked with you. I will still be in the CMO space and would be happy to reach out to you once I begin my new role in mid-Jan.

Have a wonderful rest of the year and look forward to connecting in Jan.

Kind regards,
Jessie

**Jessie Attariwala**
*Senior Business Development Manager*
*jessie.attariwala@singota.com*
T: 847.942.7049





4320 West Zenith Dr. Bloomington, IN 47404

CONFIDENTIAL: This transmission(including any attachments) may contain Confidential Information of BioConvergence LLC dba Singota Solutions and is intended solely for the recipient(s) named above. If you are not a named recipient, any interception, copying, distribution, disclosure or use of this transmission or any information contained in it is strictly prohibited, and may be subject to criminal and civil penalties. If you have received this transmission in error, please immediately call us at (812) 961-1700, delete the transmission from all forms of electronic or other storage, and destroy all hard copies.
Do NOT forward this transmission. Thank you.

**From:** ████████████████████ >
**Sent:** Tuesday, December 18, 2018 11:01 AM
**To:** Jessie Attariwala <jessie.attariwala@singota.com>
**Subject:** Re: Singota follow up

[ATTENTION: This email came from an external source! DO NOT click on links or open attachments from unknown senders or unexpected emails. If the email looks suspicious, contact IT.]

Sorry Jessie,

I was tied up in an HR issue. Will need to reschedule. I have the questionnaire I can send you.

████

Get Outlook for iOS

**From:** Jessie Attariwala <jessie.attariwala@singota.com>
**Sent:** Tuesday, December 18, 2018 10:01 AM
**To:** ████████████
**Subject:** RE: Singota follow up

Hi ████,

What's the best number to reach you?

**Jessie Attariwala**
*Senior Business Development Manager*
*jessie.attariwala@singota.com*
T: 847.942.7049





*4320 West Zenith Dr. Bloomington, IN 47404*

*CONFIDENTIAL: This transmission(including any attachments) may contain Confidential Information of BioConvergence LLC dba Singota Solutions and is intended solely for the recipient(s) named above. If you are not a named recipient, any interception, copying, distribution, disclosure or use of this transmission or any information contained in it is strictly prohibited, and may be subject to criminal and civil penalties. If you have received this transmission in error, please immediately call us at (812) 961-1700, delete the transmission from all forms of electronic or other storage, and destroy all hard copies.*
*Do NOT forward this transmission. Thank you.*

**From:** ██████████████████████ >
**Sent:** Wednesday, December 12, 2018 12:03 PM
**To:** Jessie Attariwala <jessie.attariwala@singota.com>
**Subject:** RE: Singota follow up

[ATTENTION: This email came from an external source! DO NOT click on links or open attachments from unknown senders or unexpected emails. If the email looks suspicious, contact IT.]
Thanks Jessie,

Tuesday works for me.

Regards,

████

**From:** Jessie Attariwala <jessie.attariwala@singota.com>
**Sent:** Wednesday, December 12, 2018 9:33 AM
**To:** ██████████████████████ >
**Subject:** RE: Singota follow up

Hi ████,

No problem.

How about 2pm on Monday or 10am on Tuesday?

3

**Jessie Attariwala**
*Senior Business Development Manager*
*jessie.attariwala@singota.com*
T: 847.942.7049

4320 West Zenith Dr. Bloomington, IN 47404

*CONFIDENTIAL: This transmission(including any attachments) may contain Confidential Information of BioConvergence LLC dba Singota Solutions and is intended solely for the recipient(s) named above. If you are not a named recipient, any interception, copying, distribution, disclosure or use of this transmission or any information contained in it is strictly prohibited, and may be subject to criminal and civil penalties. If you have received this transmission in error, please immediately call us at (812) 961-1700, delete the transmission from all forms of electronic or other storage, and destroy all hard copies.*
*Do NOT forward this transmission. Thank you.*

-----Original Appointment-----
**From:** ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇>
**Sent:** Wednesday, December 12, 2018 8:47 AM
**To:** Jessie Attariwala
**Subject:** Declined: Singota follow up
**When:** Wednesday, December 12, 2018 10:00 AM-10:30 AM (UTC-05:00) Eastern Time (US & Canada).
**Where:** ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

[ATTENTION: This email came from an external source! DO NOT click on links or open attachments from unknown senders or unexpected emails. If the email looks suspicious, contact IT.]
Hi Jessie,

I'm sorry, but I need to reschedule for Monday or Tuesday next week.

Let me know if you have availability.

Thanks,

▇▇▇

🖳 **Please consider the environment before printing this email**

Confidentiality notice and disclaimer: The information in this message and any attachments is intended for the exclusive use of the addressee(s), is confidential and may be privileged or otherwise protected from disclosure. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, of any such information by persons or entities other than the intended addressee(s) is prohibited. If you have received this message in error and are not the intended addressee, please notify the sender immediately and delete this message and any attachments from your system without reading or disclosing them. If you are not the intended addressee, be advised that any use of the information in this message and any attachment is prohibited and may be unlawful, and you must not copy this message or attachment or disclose the contents to any other person.



**From:** Jessie Attariwala
**Sent:** Monday, December 17, 2018 12:58 PM
**To:** █████████████████████ >
**Subject:** Singota Solutions

Hi ████,

Hope you're well. It was great to meet you a few weeks ago and thanks again for taking the time to chat with us. Please see the attached company overview and let us know if you have any questions.

I am actually moving on from Singota to another company starting January. Will Powers would be your main point of contact at Singota.

If okay with you, I'd love to connect once I've settled in.

Have a wonderful holiday season,
Jessie

**Jessie Attariwala**
*Senior Business Development Manager*
*jessie.attariwala@singota.com*
T: 847.942.7049





4320 West Zenith Dr. Bloomington, IN 47404

*CONFIDENTIAL: This transmission (including any attachments) may contain Confidential Information of BioConvergence LLC dba Singota Solutions and is intended solely for the recipient(s) named above. If you are not a named recipient, any interception, copying, distribution, disclosure or use of this transmission or any information contained in it is strictly prohibited, and may be subject to criminal and civil penalties. If you have received this transmission in error, please immediately call us at (812) 961-1700, delete the transmission from all forms of electronic or other storage, and destroy all hard copies.*
*Do NOT forward this transmission. Thank you.*



**From:** Jessie Attariwala
**Sent:** Wednesday, December 19, 2018 2:44 PM

1

**To:** ███████████████████████

**Subject:** RE: Singota Visit

Thanks so much, ██████! I'll still be in the industry and would be happy to connect in mid-Jan after I start my new role.

Happy New Year to you and yours!

**Jessie Attariwala**
*Senior Business Development Manager*
*jessie.attariwala@singota.com*
T: 847.942.7049



Singota will be closed on December 24th, 25th and 31st and
January 1st.



*4320 West Zenith Dr. Bloomington, IN 47404*

CONFIDENTIAL: This transmission(including any attachments) may contain Confidential Information of BioConvergence LLC dba Singota Solutions and is intended solely for the recipient(s) named above. If you are not a named recipient, any interception, copying, distribution, disclosure or use of this transmission or any information contained in it is strictly prohibited, and may be subject to criminal and civil penalties. If you have received this transmission in error, please immediately call us at (812) 961-1700, delete the transmission from all forms of electronic or other storage, and destroy all hard copies.
Do NOT forward this transmission. Thank you.

**From:** ██████████████████████████ >
**Sent:** Wednesday, December 19, 2018 2:41 PM
**To:** Jessie Attariwala <jessie.attariwala@singota.com>; ████████████████████ >
**Cc:** Laura Englander <laura.englander@singota.com>; William Powers <will.powers@singota.com>
**Subject:** RE: Singota Visit

[ATTENTION: This email came from an external source! DO NOT click on links or open attachments from unknown senders or unexpected emails. If the email looks suspicious, contact IT.]
Jessie – Best wishes and have a happy new year!

Laura – ████████ are happy to re-connect after the new year.

Thanks for the notification.

Regards,

████████



2

**From:** Jessie Attariwala <jessie.attariwala@singota.com>
**Sent:** Wednesday, December 19, 2018 2:23 PM
**To:** ████████████████████ >; ████████████████████████████ >
**Cc:** Laura Englander <laura.englander@singota.com>; William Powers <will.powers@singota.com>
**Subject:** [External] RE: Singota Visit

Hi ████ and ██████ ,

Hope you both are well and enjoying the holiday season.

I'm writing to let you know that I have resigned my position at Singota Solutions. I will be available through Friday, December 21, but after that date, Laura Englander will be taking over your account. Laura is an experienced account manager, and I'm confident that you'll receive the very best service and support. You can reach her at Laura.englander@singota.com or by phone at 812.961.1752.

It has been an absolute pleasure to work with you, and I thank you for a great business relationship during my time here at Singota. I sincerely hope our paths cross again and wish you all the best.

Kind regards,
Jessie

**Jessie Attariwala**
*Senior Business Development Manager*
*jessie.attariwala@singota.com*
T: 847.942.7049



**Singota will be closed on December 24th, 25th and 31st and January 1st.**



*4320 West Zenith Dr. Bloomington, IN 47404*

CONFIDENTIAL: This transmission(including any attachments) may contain Confidential Information of BioConvergence LLC dba Singota Solutions and is intended solely for the recipient(s) named above. If you are not a named recipient, any interception, copying, distribution, disclosure or use of this transmission or any information contained in it is strictly prohibited, and may be subject to criminal and civil penalties. If you have received this transmission in error, please immediately call us at (812) 961-1700, delete the transmission from all forms of electronic or other storage, and destroy all hard copies.
Do NOT forward this transmission. Thank you.

**From:** ██████████████████████████ >
**Sent:** Tuesday, November 20, 2018 3:34 PM
**To:** William Powers <will.powers@singota.com>
**Cc:** Jessie Attariwala <jessie.attariwala@singota.com>; John Hufnagel <john.hufnagel@singota.com>; Travis Hudson <travis.hudson@singota.com>; Alyssa Woolard <alyssa.woolard@singota.com>; ████████████████████
**Subject:** RE: Singota Visit

[ATTENTION: This email came from an external source! DO NOT click on links or open attachments from unknown senders or unexpected emails. If the email looks suspicious, contact IT.]

Thank you ████

I shared your QA contact with our QA team.

@ Jessie is your team available Jan 3 or 4 for a call?

Happy Thanksgiving!

████

**From:** William Powers <will.powers@singota.com>
**Sent:** Tuesday, November 20, 2018 3:26 PM
**To:** ████████████████████████████ >
**Cc:** Jessie Attariwala <jessie.attariwala@singota.com>; John Hufnagel <john.hufnagel@singota.com>; Travis Hudson <travis.hudson@singota.com>; Alyssa Woolard <alyssa.woolard@singota.com>; William Powers <will.powers@singota.com>
**Subject:** [External] RE: Singota Visit

Hi ████,
No problem, and thanks for coming to see us.
1. To schedule an audit, your QA folks should contact John Hufnagel our Director QA/RA directly; his email is in the CC line above.
2. To set up a meeting to go over warehousing, please contact Jessie Attariwala (email in CC above). She is our East Coast BD Manager. We will have the right folks on the phone call.

We look forward to working with you.
Please copy the Singota folks on the CC list above.

Happy Thanksgiving to you as well!

Will

**William Powers**
*Sr. Director of Business Development*
*will.powers@singota.com*
T: 812.961.1746
M: 610.350.6683





*4320 West Zenith Dr. Bloomington, IN 47404*

*CONFIDENTIAL: This transmission(including any attachments) may contain Confidential Information of BioConvergence LLC dba Singota Solutions and is intended solely for the recipient(s) named above. If you are not a named recipient, any interception, copying, distribution, disclosure or use of this transmission or any information contained in it is strictly prohibited, and may be subject to criminal and civil penalties. If you have received this transmission in error, please immediately call us at (812) 961-1700, delete the transmission from all forms of electronic or other storage, and destroy all hard copies.
Do NOT forward this transmission. Thank you.*

**From:** ████████████████████████ >
**Sent:** Tuesday, November 20, 2018 2:04 PM
**To:** William Powers <will.powers@singota.com>; ████████████████████████ >; ████████

███████████

**Cc:** Jessie Attariwala <jessie.attariwala@singota.com>
**Subject:** RE: Singota Visit

[ATTENTION: This email came from an external source! DO NOT click on links or open attachments from unknown senders or unexpected emails. If the email looks suspicious, contact IT.]
███████████ ,

Thank you again for accommodating our visit.

Our QA team will be reaching out if they have not already to schedule an Audit in early Q1. The audit will cover the warehouse and Aseptic Fill Area

We would like to schedule a discussion in early January to align on next steps with respect to warehousing.

Is there a point contact that we should reach to schedule the meeting.

Have a Happy Thanksgiving

███████

**From:** William Powers <will.powers@singota.com>
**Sent:** Monday, November 12, 2018 12:31 PM
**To:** ████████████████████████████████
**Cc:** Jessie Attariwala <jessie.attariwala@singota.com>
**Subject:** [External] Singota Visit

Gentlemen,
Thanks for visiting us last Friday. We trust you all made it home safely on Saturday.

Jessie will be getting back to you, following up on any other information you might need.

Sincerely,
Will and Brent

**William Powers**
*Sr. Director of Business Development*
*will.powers@singota.com*
T: 812.961.1746
M: 610.350.6683





*4320 West Zenith Dr. Bloomington, IN 47404*

*CONFIDENTIAL: This transmission(including any attachments) may contain Confidential Information of BioConvergence LLC dba Singota Solutions and is intended solely for the recipient(s) named above. If you are not a named recipient, any interception, copying, distribution, disclosure or use of this transmission or any information contained in it is strictly prohibited, and may be subject to criminal and civil penalties. If you have received this transmission in error, please immediately call us at (812) 961-1700, delete the transmission from all forms of electronic or other storage, and destroy all hard copies.*
*Do NOT forward this transmission. Thank you.*

# Exhibit 2



**From:** Jessie Attariwala
**Sent:** Friday, December 21, 2018 11:07 AM

**To:** █████████████████████ >
**Subject:** RE: Singota CDA expiring

Similar role, CMO Business Development. https://www.emergentbiosolutions.com/manufacturing-expertise

Closer to home and more learning opportunity so happy about that!

**Jessie Attariwala**
*Senior Business Development Manager*
*jessie.attariwala@singota.com*
T: 847.942.7049



Singota will be closed on December 24th, 25th and 31st and
January 1st.



*4320 West Zenith Dr. Bloomington, IN 47404*

*CONFIDENTIAL: This transmission (including any attachments) may contain Confidential Information of BioConvergence LLC dba Singota Solutions and is intended solely for the recipient(s) named above. If you are not a named recipient, any interception, copying, distribution, disclosure or use of this transmission or any information contained in it is strictly prohibited, and may be subject to criminal and civil penalties. If you have received this transmission in error, please immediately call us at (812) 961-1700, delete the transmission from all forms of electronic or other storage, and destroy all hard copies.
Do NOT forward this transmission. Thank you.*

**From:** ████████████████████ >
**Sent:** Friday, December 21, 2018 10:59 AM
**To:** Jessie Attariwala <jessie.attariwala@singota.com>
**Subject:** Re: Singota CDA expiring

[ATTENTION: This email came from an external source! DO NOT click on links or open attachments from unknown senders or unexpected emails. If the email looks suspicious, contact IT.]

Better company? Better role?  Good luck!

Get Outlook for iOS

**From:** Jessie Attariwala <jessie.attariwala@singota.com>
**Sent:** Friday, December 21, 2018 10:30 AM
**To:** ████████
**Subject:** RE: Singota CDA expiring

**EXTERNAL**

Hi ████,

2

Thank you. I appreciate the kind words. Yes, I'm going to Emergent BioSolutions. I would be happy to reach out once I begin my new role in mid-Jan.

Jessie

**Jessie Attariwala**
*Senior Business Development Manager*
*jessie.attariwala@singota.com*
T: 847.942.7049



**Singota will be closed on December 24th, 25th and 31st and January 1st.**



*4320 West Zenith Dr. Bloomington, IN 47404*

*CONFIDENTIAL: This transmission(including any attachments) may contain Confidential Information of BioConvergence LLC dba Singota Solutions and is intended solely for the recipient(s) named above. If you are not a named recipient, any interception, copying, distribution, disclosure or use of this transmission or any information contained in it is strictly prohibited, and may be subject to criminal and civil penalties. If you have received this transmission in error, please immediately call us at (812) 961-1700, delete the transmission from all forms of electronic or other storage, and destroy all hard copies.*
*Do NOT forward this transmission. Thank you.*

**From:** ██████████████████████ >
**Sent:** Friday, December 21, 2018 10:27 AM
**To:** Jessie Attariwala <jessie.attariwala@singota.com>
**Subject:** RE: Singota CDA expiring

[ATTENTION: This email came from an external source! DO NOT click on links or open attachments from unknown senders or unexpected emails. If the email looks suspicious, contact IT.]
Hi Jessie, sorry to see you go......thanks for all of your support too. Can you share where you are going? ████

**From:** Jessie Attariwala <jessie.attariwala@singota.com>
**Sent:** Friday, December 21, 2018 10:25 AM
**To:** ██████████████████████████; ██████████████████████ >
**Cc:** William Powers <will.powers@singota.com>; Erika Morris <erika.morris@singota.com>
**Subject:** RE: Singota CDA expiring

**EXTERNAL**

Hello ████████████████,

Hope you are well and enjoying the holiday season.

I'm writing to let you know that I have resigned my position at Singota Solutions. Will Powers is going to be available for BD Support as well as Erika Morris. Erika is an experienced account manager, and I'm confident that you'll receive the very best service and support. You can reach her at Erika.morris@singota.com or by phone at 812.961.1758.

It has been an absolute pleasure to work with you. I sincerely hope our paths cross again and wish you well in your future endeavors.

Kind regards,
Jessie

**Jessie Attariwala**
*Senior Business Development Manager*
*jessie.attariwala@singota.com*
T: 847.942.7049



Singota will be closed on December 24th, 25th and 31st and
January 1st.



*4320 West Zenith Dr. Bloomington, IN 47404*

*CONFIDENTIAL: This transmission(including any attachments) may contain Confidential Information of BioConvergence LLC dba Singota Solutions and is intended solely for the recipient(s) named above. If you are not a named recipient, any interception, copying, distribution, disclosure or use of this transmission or any information contained in it is strictly prohibited, and may be subject to criminal and civil penalties. If you have received this transmission in error, please immediately call us at (812) 961-1700, delete the transmission from all forms of electronic or other storage, and destroy all hard copies.*
*Do NOT forward this transmission. Thank you.*

**From:** ████████████████████████████>
**Sent:** Tuesday, December 4, 2018 3:08 PM
**To:** Jessie Attariwala <jessie.attariwala@singota.com>
**Cc:** ██████████████████>; William Powers <will.powers@singota.com>
**Subject:** RE: Singota CDA expiring

[ATTENTION: This email came from an external source! DO NOT click on links or open attachments from unknown senders or unexpected emails. If the email looks suspicious, contact IT.]
Hi Jessie,

With the changes going on within the organization and year-end rapidly approaching, we will need to hold off until the new year to get back in touch.

Hope you have a great holiday season!

Thanks,



**From:** Jessie Attariwala <jessie.attariwala@singota.com>
**Sent:** Tuesday, December 04, 2018 2:52 PM
**To:** ████████████████████████>

Cc: ██████████████████████ >; William Powers <will.powers@singota.com>
**Subject:** RE: Singota CDA expiring

**EXTERNAL**

Hi ██████ ,

Hope things are well. Just wanted to check in. Did you have a chance to review and modify the CDA?

Thanks,
Jessie

**Jessie Attariwala**
*Senior Business Development Manager*
*jessie.attariwala@singota.com*
T: 847.942.7049

**Singota will be closing on December 7th at 9:30am to accommodate a company holiday outing.**

*4320 West Zenith Dr. Bloomington, IN 47404*

*CONFIDENTIAL: This transmission(including any attachments) may contain Confidential Information of BioConvergence LLC dba Singota Solutions and is intended solely for the recipient(s) named above. If you are not a named recipient, any interception, copying, distribution, disclosure or use of this transmission or any information contained in it is strictly prohibited, and may be subject to criminal and civil penalties. If you have received this transmission in error, please immediately call us at (812) 961-1700, delete the transmission from all forms of electronic or other storage, and destroy all hard copies.*
*Do NOT forward this transmission. Thank you.*

**From:** Jessie Attariwala
**Sent:** Monday, November 5, 2018 10:11 AM
**To:** ████████████████████████ >
**Cc:** ████████████████ >; William Powers <will.powers@singota.com>
**Subject:** RE: Singota CDA expiring

Hi ██████ ,

Hope you had a nice weekend. We do not keep word document copies once a CDA has been signed. Please see the attached original CDA and let me know if you have any questions.

Kind regards,
Jessie

**Jessie Attariwala**
*Senior Business Development Manager*
*jessie.attariwala@singota.com*
T: 847.942.7049

4320 West Zenith Dr. Bloomington, IN 47404

CONFIDENTIAL: This transmission (including any attachments) may contain Confidential Information of BioConvergence LLC dba Singota Solutions and is intended solely for the recipient(s) named above. If you are not a named recipient, any interception, copying, distribution, disclosure or use of this transmission or any information contained in it is strictly prohibited, and may be subject to criminal and civil penalties. If you have received this transmission in error, please immediately call us at (812) 961-1700, delete the transmission from all forms of electronic or other storage, and destroy all hard copies.
Do NOT forward this transmission. Thank you.

**From:** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ >
**Sent:** Friday, November 2, 2018 2:49 PM
**To:** Jessie Attariwala <jessie.attariwala@singota.com>
**Cc:** ▮▮▮▮▮▮▮▮▮▮ >; William Powers <will.powers@singota.com>
**Subject:** RE: Singota CDA expiring

[ATTENTION: This email came from an external source! DO NOT click on links or open attachments from unknown senders or unexpected emails. If the email looks suspicious, contact IT.]
Hi Jessie,

Would you happen to have the older CDA in a word format? That will be the quickest way to move this forward.

Thanks,

▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**From:** Jessie Attariwala <jessie.attariwala@singota.com>
**Sent:** Friday, November 02, 2018 2:42 PM
**To:** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ >
**Cc:** ▮▮▮▮▮▮▮▮▮▮ >; William Powers <will.powers@singota.com>
**Subject:** Singota CDA expiring


**EXTERNAL**

Hi ▮▮▮▮▮ ,

Hope things are well.

Our mutual CDA expires in January 2019. I have attached our CDA or if you would to send me ▆▆▆, I can have legal review. Please let me know the ▆▆ renewal process and how you would like to proceed so we can have that in place ahead of our next conversations.

Kind regards,
Jessie

**Jessie Attariwala**
*Senior Business Development Manager*
*jessie.attariwala@singota.com*
T: 847.942.7049

*4320 West Zenith Dr. Bloomington, IN 47404*

*CONFIDENTIAL: This transmission(including any attachments) may contain Confidential Information of BioConvergence LLC dba Singota Solutions and is intended solely for the recipient(s) named above. If you are not a named recipient, any interception, copying, distribution, disclosure or use of this transmission or any information contained in it is strictly prohibited, and may be subject to criminal and civil penalties. If you have received this transmission in error, please immediately call us at (812) 961-1700, delete the transmission from all forms of electronic or other storage, and destroy all hard copies.*
*Do NOT forward this transmission. Thank you.*



# Exhibit 3

# Ogletree
# Deakins

**OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.**

*Attorneys at Law*

111 Monument Circle, Suite 4600
Indianapolis, IN 46204
Telephone: 317.916.1300
Facsimile: 317.916.9076
www.ogletree.com

Christopher C. Murray
317-916-2522
christopher.murray@ogletree.com

January 18, 2019

**Via Electronic Mail and
First Class Mail**

## CEASE AND DESIST AND
## PRESERVATION NOTICE

### DO NOT DESTROY, DELETE OR ALTER ANY RECORD OR INFORMATION
### COVERED BY THIS LETTER.

Jody M. Butts
McNeely Stephenson
2150 Intelliplex Drive, Suite 100
Shelbyville, IN 46176
Jody.m.butts@msth.com

     Re:   *Jaspreet Attariwala*

Dear Ms. Butts:

     As you know, we represent BioConvergence LLC d/b/a Singota Solutions ("Singota") in labor and employment law matters. This letter is directed to your client, Jaspreet Attariwala.

     During Ms. Attariwala's employment with Singota, she signed an Employment Agreement that contained confidentiality and non-solicitation provisions (the "Agreement"), a copy of which is enclosed for your reference. We will also be sending a copy of this letter and Ms. Attariwala's Employment Agreement with Singota to Emergent BioSolutuions ("Emergent"), who we understand is Ms. Attariwala's new employer. As Ms. Attariwala is aware, Emergent is a competitor of Singota.

     As set forth below, Ms. Attariwala agreed not to use or disclose any Confidential Information, except as required in the course of her employment with Singota. Singota's Confidential Information is not only protected by the Agreement she signed, but also by the federal Defend Trade Secrets Act of 2016 (18 U.S.C. § 1836) and the Indiana Uniform Trade Secrets Act (I.C. 24-2-3-1, *et seq.*). Ms. Attariwala further agreed to return all such property to Singota upon termination of her employment.

Atlanta ▪ Austin ▪ Berlin (Germany) ▪ Birmingham ▪ Boston ▪ Charleston ▪ Charlotte ▪ Chicago ▪ Cleveland ▪ Columbia ▪ Dallas ▪ Denver ▪ Detroit Metro ▪ Greenville
Houston ▪ Indianapolis ▪ Jackson ▪ Kansas City ▪ Las Vegas ▪ London (England) ▪ Los Angeles ▪ Memphis ▪ Mexico City (Mexico) ▪ Miami ▪ Milwaukee ▪ Minneapolis
Morristown ▪ Nashville ▪ New Orleans ▪ New York City ▪ Oklahoma City ▪ Orange County ▪ Paris (France) ▪ Philadelphia ▪ Phoenix ▪ Pittsburgh ▪ Portland ▪ Raleigh ▪ Richmond
St. Louis ▪ St. Thomas ▪ Sacramento ▪ San Antonio ▪ San Diego ▪ San Francisco ▪ Seattle ▪ Stamford ▪ Tampa ▪ Toronto (Canada) ▪ Torrance ▪ Tucson ▪ Washington

January 18, 2019
Page 2

**Ogletree**
**Deakins**

In violation of her agreements with Singota and other obligations, Ms. Attariwala has solicited the business of Singota customers and prospects for the benefit of herself and potentially her new employer, Emergent Solutions. Singota has learned that Ms. Attariwala *began reaching out to Singota business contacts verbally and electronically while she was still employed by Singota and using Singota's Confidential Information to inform those contacts that she was going to Singota's competitor Emergent. She informed Singota's business contacts that she would reach out to them in January on behalf of her new employer after she began her new position.*

Significantly, during her employment with Singota, Ms. Attariwala was trained on the Vanrx SA25 Aseptic Filling Workcell, an innovative technology. Singota is one of the few companies in the United States to use this technology. Emergent -- Ms. Attariwala's new employer -- is one of the few others. *See* https://vanrx.com/customer-case-studies/#   Singota is reasonably concerned that Ms. Attariwala is misusing her access to information concerning Singota's customers and prospects for this technology (among Singota's other services) for her own benefit at her new employment. Indeed, Singota has discovered that Ms. Attariwala sent emails *from her Singota email account* to *Singota business contacts* informing them of her new employment and even sending a hyperlink to Emergent's company website.

All such conduct directly violates Ms. Attariwala's agreements with Singota. For example, in her Employment Agreement, Ms. Attariwala made specific promises. Paragraph 4 ("Confidential Information") provides in relevant part:

4.    Confidential Information.

(a) Definition. For purposes of this Agreement, "Confidential Information" shall mean any proprietary, confidential or competitively-sensitive information and materials which are the property of or relate to the Company or the business of the Company. Confidential Information shall include without limitation all information and materials created by, provided to or otherwise disclosed to Employee in connection with Employee's employment with the Company (excepting only information and materials already known by the general public), including without limitation (i) trade secrets, **(ii) the names and addresses of the Company's past, present or prospective** contributors, beneficiaries or **business contacts**, and all information relating to such contributors, beneficiaries or business contacts, regardless of whether such information was supplied or produced by the Company or such contributors, beneficiaries or business contacts; and (iii) information concerning the Company's affiliates, financing sources, profits, revenues, financial condition, fund raising activity, and investment activity, business strategies, or software used by the Company and associated layouts, templates, processes, documentation, databases, designs and techniques.

(b) Non-Disclosure. Employee acknowledges and agrees that Confidential Information is the property of the Company, and that Employee shall not acquire any ownership rights in Confidential Information. Employee (i) **shall use Confidential Information solely in connection with Employee's employment with the Company;** (ii) **shall not directly or indirectly** disclose, use or **exploit any Confidential Information for Employee's own benefit or for the benefit of any person or entity, other than the**

January 18, 2019
Page 3

**Ogletree
Deakins**

> **Company, both during and after Employee's employment with the Company or as required by law; and (iii)** shall hold Confidential Information in trust and confidence, and use all reasonable means to assure that it is not directly or indirectly disclosed to or copied by unauthorized persons or used in an unauthorized manner, both during and after Employee's employment with the Company.

Employment Agreement ¶ 4 (emphasis added). Paragraph 6 further provides:

> 6. Non-Solicitation. During Employee's employment with the Company and **for a period of twelve (12) months (which shall be extended by the length of any period during which Employee is in violation of this section) immediately following the termination of Employee's employment for any reason, Employee (on Employee's own behalf or that of any other person or entity) shall not directly or indirectly sell or otherwise provide or solicit the sale or provision of any product or service that competes directly or indirectly with any business of the Company to any customer or prospective customer as to which, during the 12 months immediately preceding the date of termination, Employee (i) engaged in any solicitation, sales activity, or other direct contact (in person, in writing, by telephone or electronically) on behalf of the Company; (ii) performed any duties or services on behalf of the Company; and/or (iii) received any Confidential Information.**

Employment Agreement ¶ 6 (emphasis added). Finally, the Employment Agreement provides in relevant part:

> 9. Breach of Agreement and Remedies. Employee acknowledges and agrees that Employee's actual or threatened breach of this Agreement may cause or threaten irreparable injury to the Company that cannot adequately be measured in money damages. The Company shall therefore be entitled to obtain injunctive relief with respect to any such actual or threatened breach by Employee in addition to and not in lieu of any other available remedies. Employee shall also pay any and all costs, damages and other expenses, including without limitation all attorneys' fees, witness fees and other legal expenses which are incurred by the Company in successfully enforcing this Agreement. Employee further acknowledges and agrees that the existence of any claim or cause of action by Employee against the Company, whether or not predicated upon Employee's employment relationship with the Company, shall not relieve Employee of Employee's obligations under this Agreement.

Employment Agreement ¶ 9.

## Notice and Demand for Assurances and Information

Singota demands that Ms. Attariwala cease and desist all activities that violate or otherwise interfere with the restrictive covenants contained in her Employment Agreement and that she conduct herself in accordance with applicable law. Should she choose not to comply, Singota will have no alternative but to initiate all appropriate litigation to protect its Confidential Information and other interests.

January 18, 2019
Page 4

**Ogletree Deakins**

Ms. Attariwala must give these issues immediate and responsible attention. Singota demands that she immediately respond to this letter in writing **on or before January 23, 2019** and under oath:

(i)     Identify all of Singota's Confidential Information and any other property belonging to Singota that she accessed, used, disclosed, or currently possess in any form (paper or electronic), including information stored in any record or document (as defined in the Evidence Preservation Demand below);

(ii)    Identify all records or documents in her possession that contain, or have contained at any time, any Confidential Information and any other Singota property;

(iii)   Describe each and every use of Confidential Information since her separation from Singota. Where possible, provide dates or estimated dates of use, content of use, medium of use, and context of her use of Confidential Information;

(iv)    Describe each and every use of Confidential Information after her offer of employment from Emergent but before her separation from Singota. Where possible, provide dates or estimated dates of use, content of use, medium of use, and context of her use of Confidential Information;

(v)     Describe each and every disclosure of Confidential Information. Where possible, provide dates or estimated dates of disclosure, content of disclosure, medium of disclosure, and the recipient(s) of any such disclosure, by the name, address, and telephone number of each recipient;

(vi)    For each of Singota's Customers Ms. Attariwala solicited or contacted to inform them of her intent to leave Singota to accept employment with Emergent (regardless whether Emergent is identified by name) *prior* to the termination of her employment with Singota, describe each and every solicitation or communication, including dates or estimated dates of solicitation, nature of the solicitation, and identity of the person solicited;

(vii)   For each of Singota's Customers Ms. Attariwala has solicited, contacted, or from whom she has accepted business since the termination of her employment with Singota, describe each and every solicitation, including dates or estimated dates of solicitation, nature of the solicitation, and identity of the person solicited;

(viii)  Produce for inspection, copying, and forensic examination Ms. Attariwala's personal computer(s), cell phone used, and any other electronic storage device or medium capable of receiving or downloading email or electronically stored information. Provide the password and username for any personal, cloud-based, and other email accounts;,

(ix)    Certify that she will refrain from providing, either directly or indirectly, any product or service that competes with Singota in accord with Paragraph 6 of her Agreement.

January 18, 2019
Page 5

**Ogletree
Deakins**

(x)    Certify she has otherwise complied with and will continue to comply with each and every obligation under the Agreement, including with respect to solicitation of the Singota's Customers.

If Ms. Attariwala complies with the demands listed above, and grants Singota the right to inspect her personal storage devices to identify and record any Singota Confidential Information she has misappropriated, Ms. Attariwala may mitigate the consequences of her actions.

Nothing in this letter is intended to limit or waive any claim Singota has against Ms. Attariwala. Singota specifically reserves all rights to assert any claim arising under the Employment Agreement or applicable law, including its claims for immediate injunctive relief.

## Evidence Preservation Demand

This letter also serves as a formal demand that Ms. Attariwala keep any and all documents, records, data or other information that relate in any way to (1) Singota; (2) any of Singota's clients, customers, or accounts; (3) any of Singota's prospective clients, customers, or accounts of whom Ms. Attariwala became aware during her employment with Singota; or (4) any of Singota's confidential, proprietary, trade secret, or other information not accessible by the public using reasonable measures. This scope of relevant documents, records, data and other information will be referred to generally as "Relevant Information."

The following letter outlines Singota's demand with respect to the preservation and storage of evidence. This letter covers, but is not limited to, documents that the Federal Rules of Civil Procedure describe as Electronically Stored Information ("ESI"), which is described in more detail below. Please review the following information carefully and preserve all records and information accordingly.

### Definition of Records/Documents and Electronically Stored Information

The definition of "record" or "document" includes anything that stores information, including but not limited to:

(i)    paper (e.g., documents, presentations, notes, day planners, logs, lists, agendas, correspondence, photographs, facsimiles, computer printouts, etc.);

(ii)    microfilm;

(iii)    electronic mail;

(iv)    text messages and any other instant messaging system;

(v)    social media, drop box, and/or cloud websites;

(iv)    other electronic files, including, but not limited to files created using Microsoft Office programs (e.g., Word, PowerPoint, Excel, Access and Visio) or accounting programs (e.g. QuickBooks), as well as databases and websites; and/or,

(v)    audio or visual media (e.g., voice mail, video tapes or digital photographs).

For purposes of this letter, "electronically stored information" includes but is not limited to:

(i)    text files (including word processing documents),

January 18, 2019

Page 6

**Ogletree**
**Deakins**

    (ii)     presentation files (such as PowerPoint),

    (iii)    spread sheets,

    (iv)    photographs or screen shots,

    (v)     email files and information concerning email files (including logs of email history and usage, header information, and deleted files),

    (vi)    internet history files and preferences,

    (vii)   graphical files in any format,

    (viii)  databases,

    (ix)    financial information,

    (x)     calendar and scheduling information,

    (xi)    task lists,

    (xii)   telephone logs,

    (xiii)  contact managers,

    (xiv)  computer system activity logs, and/or,

    (xv)   all file fragments and backup files containing electronic data.

      Ms. Attariwala shall preserve and retain all hard copy records (to the extent that they exist) and is not to change, erase, pack, compress, purge, defrag, manipulate, cancel, destroy, delete, modify, tamper with and/or impair any of the electronically stored information. Please instruct Ms. Attariwala to turn off any auto-deletion or other similar software from the foregoing devices.

**Location of Records to Be Preserved and Electronically Stored Information**

      Records and information within the scope of this Preservation Notice should be preserved against deletion or alteration regardless of how or where they are currently stored, including but not limited to records and information:

- Stored on any personal or business storage devices, regardless of its location;

- Portable, home/work desktop or laptop computers, BlackBerry, iPhone, Smartphone, PDA, and Tablets;

- Computer hard drives, including home and work desktops and laptops, and any network accounts provided for Ms. Attariwala's use by her present employer;

- Accessed through Outlook or some other program or system by Ms. Attariwala to access email or documents processed through Microsoft Office software or other software;

- Accessed from a computer over the internet, (*e.g.,* Hotmail, Gmail, yahoo, AOL), or from a remote server;

- Accessed through a personal digital assistant, BlackBerry, Smartphone, PDA, Tablet (*e.g.,* iPad, Blackberry Playbook, Motorola XOOM, HP Touchpad, Samsung Galaxy Tab), or other wireless device;

January 18, 2019
Page 7

**Ogletree**
**Deakins**

- Stored on a fixed and removal media, magnetic or optical storage media, including, but not limited to, hard disk drives, thumb drives, USB devices, portable storage or similar devices, back up tapes, portable storage devices, CDs, DVDs, PDF files, TIF files, JPEG files, and Zip, Jaz or floppy disks, or flash drives; and/or,

- In paper form regardless of current location.

If Ms. Attariwala created records, documents, memoranda, letters, decks and/or spreadsheets from Relevant Information, that contain Relevant Information or that are relevant to the subject matter of this case, each shall be identified as containing potentially relevant information.

### Electronically Stored Information

Electronically stored versions of documents or records and the storage media on which they are saved can contain relevant, discoverable information beyond that which may be found in hard copy versions of the documents. Ms. Attariwala may be requested to produce electronic versions of relevant documents in their native formats along with information contained in non-visible electronic forms of those documents, even where a paper copy exists. Ms. Attariwala may also be requested to provide certain relevant data on the hard disks, USB, portable storage or memory devices, and backup media used in certain computers, some of which may contain data that is not readily available to an ordinary computer user. Accordingly, Ms. Attariwala should maintain and not alter or destroy any of this type of information that is potentially relevant.

Ms. Attariwala should turn off any auto-deletion applications or software on any device containing electronically stored information. Ms. Attariwala should also direct members of her family whose email accounts or computers may contain Relevant Information to suspend any routine document retention and destruction procedures, and take all steps to preserve the records and ESI stored thereon consistent with the content of this notice. In addition to not "changing," "erasing," "packing," "purging," defragging," "manipulating," "destroying," "deleting," "modifying," "tampering" with and/or "impairing," neither Ms. Attariwala, her spouse, family members, or anyone else should "pack," "compress," "purge," "defrag," or otherwise manipulate computers, storages devices, files or parts of files until and unless a true and correct copy is made by designated and agreed upon personnel without altering the original information.

Please do not in any way alter, or even copy or resave any computer records or other ESI, such as emails and records that may be relevant to the claims in the above-captioned matter as these actions will automatically alter certain computer characteristics or metadata of the files that may be important.

Ms. Attariwala is requested to preserve all personal and business e-mail accounts, passwords, decryption procedures (including, if necessary, the software to decrypt the files), network access codes, ID names, manuals, tutorials, written instructions, decompression or reconstruction software, and any other information and things necessary to access, view and, if necessary, reconstruct the ESI that is potentially relevant in this matter.

January 18, 2019
Page 8

**Ogletree
Deakins**

Singota is committed to the enforcement of Ms. Attariwala's obligations under the Employment Agreement and the law and to protecting its interests and those of its customers. I look forward to hearing from you by the close of business on Wednesday, January 23, 2019.

Sincerely,

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

Christopher C. Murray

Enclosure

37097908.1

# Exhibit 4

**From:** Jessie Attariwala <jsaini@singota.com>
**Sent:** Tuesday, March 14, 2017 10:03 AM
**To:** jsaini1@gmail.com
**Subject:** FW: Report
**Attachments:** 2017.01.09 POR_Meeting Minutes_Singota_Final_Signed.pdf

**Jessie Saini | *Business Development Manager***
*jessie.saini@singota.com*
T: 847.942.7049





4320 West Zenith Dr. Bloomington, IN 47404
CONFIDENTIAL: This transmission(including any attachments) may contain Confidential Information of BioConvergence LLC dba Singota Solutions and is intended solely for the recipient(s) named above. If you are not a named recipient, any interception, copying, distribution, disclosure or use of this transmission or any information contained in it is strictly prohibited, and may be subject to criminal and civil penalties. If you have received this transmission in error, please immediately call us at (812) 961-1700, delete the transmission from all forms of electronic or other storage, and destroy all hard copies.
Do NOT forward this transmission. Thank you.

**From:** William Powers
**Sent:** Thursday, March 9, 2017 11:58 AM
**To:** Jessie Saini <jessie.saini@singota.com>
**Subject:** Report

Hi Jessie.,
See attached. This is confidential and can't be shared with anyone outside our company.

Will

# Exhibit 5



**From:** Jessie Attariwala
**Sent:** Tuesday, December 11, 2018 3:25 PM
**To:** jsaini1@gmail.com
**Subject:** FW: Boston Area Contacts


**Jessie Attariwala**
*Senior Business Development Manager*
*jessie.attariwala@singota.com*
T: 847.942.7049





*4320 West Zenith Dr. Bloomington, IN 47404*

*CONFIDENTIAL: This transmission(including any attachments) may contain Confidential Information of BioConvergence LLC dba Singota Solutions and is intended solely for the recipient(s) named above. If you are not a named recipient, any interception, copying, distribution, disclosure or use of this transmission or any information contained in it is strictly prohibited, and may be subject to criminal and civil penalties. If you have received this transmission in error, please immediately call us at (812) 961-1700, delete the transmission from all forms of electronic or other storage, and destroy all hard copies.*
*Do NOT forward this transmission. Thank you.*

**From:** Eric Smart <eric.smart@centurylink.net>
**Sent:** Saturday, February 3, 2018 5:39 PM
**To:** Jessie (Saini) Attariwala <jessie.attariwala@singota.com>; Jessie (Saini) Attariwala <jessie.attariwala@singota.com>
**Subject:** Boston Area Contacts

Jessie,
I pulled up the list of contacts we worked on last time we went to Boston (see attached).  The ones highlighted in green are ones I think are better possibilities than the others.  For those roughly 30 companies, I did the best I could to update the contact and their email addresses through LinkedIn.  They should be the right person.  In some cases, I could not verify the email address so take those with a grain of salt.  Name format may need to be changed in some cases.

Hope this helps.

Eric

Eric W. Smart
President
Fountainhead Pharmaceutical Consulting, Inc.
eric.smart@centurylink.net
P:  406 407-5111

# Exhibit 6



**From:** Jessie Attariwala
**Sent:** Tuesday, December 11, 2018 4:04 PM
**To:** jsaini1@gmail.com
**Subject:** Jessie contacts











**Jessie Attariwala**
*Senior Business Development Manager*
*jessie.attariwala@singota.com*
T: 847.942.7049





4320 West Zenith Dr. Bloomington, IN 47404

CONFIDENTIAL: This transmission(including any attachments) may contain Confidential Information of BioConvergence LLC dba Singota
Solutions and is intended solely for the recipient(s) named above. If you are not a named recipient, any interception, copying, distribution,
disclosure or use of this transmission or any information contained in it is strictly prohibited, and may be subject to criminal and civil
penalties. If you have received this transmission in error, please immediately call us at (812) 961-1700, delete the transmission from all
forms of electronic or other storage, and destroy all hard copies.
Do NOT forward this transmission. Thank you.

# Exhibit 7



# QUICK FACTS
## JAN 2019


emergent
biosolutions®

## At Emergent BioSolutions our mission is to protect and enhance life.

We are a global life sciences company focused on providing specialty products for civilian and military populations that address accidental, intentional and naturally occurring public health threats. Through our work, we envision becoming a Fortune 500 global specialty life sciences company recognized for protecting and enhancing life, driving innovation, and living our values

**Founded In**
**1998**

**Approximately**
**1600**
**Employees**

**19**
**Global Locations**

**11**
**Products in Portfolio**

**CDMO**
**Bulk Drug Fill/Finish**

**$782M**
**Estimated 2018 Total Revenue***

### PRODUCT PORTFOLIO

**Vaccines**

▸ BioThrax®[1]
(Anthrax Vaccine Adsorbed)

▸ ACAM2000®[1]
(Smallpox (Vaccinia) Vaccine, Live)

▸ Vivotif®
(Typhoid Vaccine Live Oral Ty21a)

▸ Vaxchora®
(Cholera Vaccine, Live, Oral)

**Antibody Therapeutics**

▸ ANTHRASIL®
(Anthrax Immune Globulin Intravenous (Human))

▸ Raxibacumab injection
A fully human monoclonal antibody

▸ BAT®[1]
(Botulism Antitoxin Heptavalent (A, B, C, D, E, F, G) – (Equine))

▸ VIGIV
CNJ-016®[1,3]
(Vaccinia Immune Globulin Intravenous (Human))

**Devices**

▸ NARCAN® (naloxone HCl)
Nasal Spray

▸ RSDL®[1]
(Reactive Skin Decontamination Lotion Kit)

▸ Trobigard™[2]
Atropine sulfate, obidoxime chloride auto-injector
Not approved by any regulatory agency

### DEVELOPMENT PORTFOLIO

**Product Candidates**

| | Preclinical | Phase 1 | Phase 2 | Phase 3 |
|---|---|---|---|---|
| NuThrax™ AV7909 (Anthrax Vaccine Adsorbed with CPG 7909 adjuvant) | | | | 2019*** |
| FLU-IGIV (Seasonal Influenza A therapeutic) | | | | 2020** |
| Chikungunya (Chikungunya VLP vaccine) | | | | 2020** |
| ZIKV-IG (Zika Virus therapeutic) | | | | |
| AD4/AD7 (Live, attenuated vaccine) | | | | |
| UNI-FLU (Universal influenza vaccine) | | | | |
| EBX-205 (Broad-spectrum antibiotic) | | | | |
| GC-072 EV-035 Series (Burkholderia antibiotic) | | | | |
| FILOV (Pan-Ebola and Sudan Virus therapeutic) | | | | |
| EBI-001 (Pan-respiratory Iminosugar antiviral) | | | | |
| RVSV-VHF (Vector vaccine for viral hemorrhagic fevers) | | | | |

**Drug-Device Combination Candidates**

| | Status |
|---|---|
| D4 (2PAM/Atropine) | Formative Studies |
| SIAN (Stabilized Isoamyl Nitrite) | Formative Studies |
| Development Candidates from Adapt Pharma Acquisition | Multiple constructs in various stages of development focused on new treatments and delivery options for opioid overdose response |


**20**
**SINCE 1998**
**EMERGENT BIOSOLUTIONS**

1 The only available product approved by the U.S. Food and Drug Administration (FDA) for its indication. RSDL is produced under license of the Canadian Department of National Defence.
2 Not approved by the FDA or other regulatory agencies; only sold outside of the United States to authorized government buyers
3 Indicated for adverse events associated with the Smallpox vaccine
4 Status reflects both clinical and nonclinical development under the FDA Animal Efficacy Rule
* 2018 estimated value assumes the mid-point of the estimated range of total revenue results for full year 2018 as provided in the press release issued on January 7, 2019.
** First subject enrollment target date

**EBS**
**LISTED**
**NYSE.**

## PLATFORMS & TECHNOLOGIES



**Hyperimmunes**
Human and equine plasma products generated for targeted therapy of specific indications



**Auto-injectors**
Platform designed for intramuscular rapid delivery of medical treatments



**Antivirals**
Broad-spectrum iminosugars to reduce viral infectivity



**Antibacterials**
Broad-spectrum antibiotics against quinolone-resistant bacterial strains

## RECENT BUSINESS HIGHLIGHTS

- Announced submission to FDA of application covering Emergency Use Authorization for NuThrax
- Received Health Canada approval of BioThrax (Anthrax Vaccine Adsorbed)
- Reported, with Valneva, positive Phase 1 results for their vaccine candidate against the Zika virus
- Announces program offering all public libraries and YMCAs in the U.S. free opioid awareness education and NARCAN (naloxone HCl) Nasal Spray
- Completed acquisition of Adapt Pharma and its flagship product NARCAN (naloxone HCl) Nasal Spray
- Awarded CEPI contract worth up to $36 million to develop Lassa virus vaccine with Profectus BioSciences
- Completed acquisition of specialty vaccines company PaxVax
- Announced $50 million expansion of Baltimore fill/finish facility
- Awarded $25 million CEPI contract to develop Nipah virus vaccine with Profectus BioSciences
- Announced successful completion of mutual recognition procedure for market authorization of BioThrax in European countries

## AWARDS & RECOGNITION

### 2018
- **Best Contract Manufacturing Organization**
  World Vaccine Congress
- **Facility of the Year Honorable Mention**
  International Society for Pharmaceutical Engineering
- **Bioscience Company of the Year**
  Bioscience Association of Manitoba
- **Winning "W" Company**
  2020 Women on Boards

### 2017
- **Chief Executive Officer of the Year**
  Daniel J. Abdun-Nabi from the Maryland Tech Council

### 2016
- **Best Performing Company in Maryland**
  Forbes
- **Top 100 Fastest Growing Company**
  Fortune Magazine

## MANUFACTURING EXPERTISE

**Manufacturing Facilities**
- Baltimore, Maryland (Bayview/CIADM)
- Baltimore, Maryland (Camden)
- Bern, Switzerland
- Canton, Massachusetts
- Hattiesburg, Mississippi
- Lansing, Michigan
- Rockville, Maryland
- Winnipeg, Manitoba, Canada

**Contract Development and Manufacturing Operations (CDMO)**
- All phases of drug development from project origin through fill/finish of final product
- Currently producing more than 20 commercial products
- Single-use systems for efficiency and purity with minimal risk of product contamination
- Support for mammalian, microbial, avian, and insect cell lines as well as virus production
- Fill/finish capabilities include vials and syringes, liquid and lyophilized products
- Viral bulk manufacturing & viral fill/finish

**Center for Innovation in Advanced Development and Manufacturing (CIADM)**
- One of three CIADM facilities in the U.S.
- 112,000 ft² state-of-the-art facility with manufacturing areas, laboratory and office space
- Public-private partnership
- Developed with support from BARDA
- Flexible manufacturing
- Employs single-use manufacturing technology where applicable
- Surge capacity readiness

## CONTACT INFORMATION

**Corporate Headquarters**
400 Professional Drive
Suite 400
Gaithersburg, MD 20879 USA
240.631.3200

**Investor Inquiries**
Robert Burrows
VP, Investor Relations
240.631.3280
BurrowsR@ebsi.com

**Media Inquiries**
Lynn Kieffer
VP, Corporate Communications
240.631.3391
KiefferL@ebsi.com



LEARN MORE AT **ebsi.com**

  

Emergent BioSolutions, Protected by Emergent BioSolutions™, ACAM2000®, ANTHRASIL®, BAT®, BioThrax®, RSDL®, Vivotif®, Vaxchora®, NARCAN®, CNJ-016®, NuThrax™, TROBIGARD™, and any and all Emergent BioSolutions Inc. brand, product, service and feature names, logos and slogans are trademarks or registered trademarks of Emergent BioSolutions Inc. or its subsidiaries in the United States or other countries. All rights reserved. 01/19

**VACCINES & ANTI-INFECTIVES  •  ANTIBODY THERAPEUTICS  •  DEVICES  •  CONTRACT DEVELOPMENT & MANUFACTURING**